375 Ark. 533

**William L. JACKSON, Appellant,**

v.

**SPARKS REGIONAL MEDICAL CENTER & Columbia Casualty Company, Appellees.**

No. 08–323.

Supreme Court of Arkansas.

Feb. 12, 2009.

Rehearing Denied March 19, 2009.

Law Offices of Charles Karr, P.A., by Charles Karr, Fort Smith, for appellant.

Warner, Smith & Harris, PLC, by: C. Wayne Harris and Jason T. Browning, Fort Smith, for appellees.

PAUL E. DANIELSON, Justice.

Appellant William L. Jackson, as special administrator of the Estate of Sherri Jackson, deceased, appeals the order of the Sebastian County Circuit Court granting summary judgment in favor of appellees Sparks Regional Medical Center and Columbia Casualty Company. Jackson asserts that Sparks's motion for summary judgment was granted in error because Sparks is not entitled to the charitable-immunity defense and that, under the special circumstances of this case, Columbia was not entitled to summary judgment based on the expiration of the statute of limitations and the savings statute. We affirm in part and reverse and remand in part.

The record reveals the following facts. Jackson originally filed a lawsuit on February 7, 2002, against Sparks, Steadfast Insurance Company, Dr. James Patrick Bell, Emergency Medical Services Group, P.A., Dr. Robert L. Kale, and John Does Nos. 1–10, based upon allegations of medical malpractice resulting in the death of Sherri Jackson. Sparks and Steadfast filed a timely answer, in which Sparks asserted it was immune from suit because of the charitable-immunity doctrine and Steadfast denied it was the correct liability carrier for Sparks.

On May 6, 2002, Jackson filed a First Amended Complaint, naming Columbia, the correct liability carrier for Sparks, as a defendant. Jackson took a voluntary nonsuit as to Steadfast and, as a result, an order of dismissal without prejudice was entered as to Steadfast on May 7, 2002. Subsequently, Jackson also took a voluntary nonsuit as to Columbia and Sparks on April 6, 2004, and July 29, 2004, respectively.

Jackson refiled his lawsuit against Sparks, Dr. James Patrick Bell, Emergency Medical Services Group, P.A., Dr. Robert L. Kale, and John Does Nos. 1–10, on July 25, 2005. Columbia was not named as a defendant. Sparks again asserted charitable immunity in its answer and filed a motion for summary judgment on Febru-

ary 26, 2007, asserting the same. On July 6, 2007, Jackson filed a motion to substitute Columbia for Sparks. A hearing was held four days later, on July 10, 2007, on Sparks's motion for summary judgment, which the circuit court granted. On July 11, 2007, Jackson filed an Amended Complaint, naming Sparks, Columbia, and John Does Nos. 1–10 as the defendants. An order dismissing Sparks with prejudice was entered on July 17, 2007.

Columbia filed an answer and a motion for summary judgment on September 10, 2007. In its motion for summary judgment, Columbia asserted that its motion should be granted because the medical malpractice statute of limitations and the one-year savings statute had both expired. The circuit court granted Columbia's motion on November 14, 2007. Jackson now appeals from the circuit court's orders of July 17, 2007, and November 14, 2007.

■ Before reaching the merits, we must address the potential Rule 54(b) problem presented by the instant case. While neither party raises this issue on appeal, whether or not an order has been properly appealed pursuant to Rule 54(b) of the Arkansas Rules of Civil Procedure is a jurisdictional question, which this court may address sua sponte. *See Jones v. Huckabee*, 363 Ark. 239, 213 S.W.3d 11 (2005). When Jackson refiled suit on July 25, 2005, he named Sparks, Dr. James Patrick Bell, Emergency Medical Services Group, P.A., Dr. Robert L. Kale, and John Does Nos. 1–10 as the defendants. However, the record reveals that Dr. Bell, Dr. Kale, and Emergency Medical Services Group were never served or dismissed. There is also not a Rule 54(b) certificate in the record. Under the old civil procedure rule, this case would be dismissed for lack of a final order. *See McKinney v. Bishop*, 369 Ark. 191, 252 S.W.3d 123 (2007).

On October 9, 2008, this court approved a new rule, Rule 54(b)(5), said to be effective January 1, 2009. *See In re Arkansas District Court Rules*, —— Ark. App'x ——, —— S.W.3d —— (Oct. 9, 2008) (per curiam). The new rule provides:

(b) *Judgment Upon Multiple Claims or Involving Multiple Parties*

. . . .

(5) *Named but Unserved Defendant.* Any claim against a named but unserved defendant, including a "John Doe" defendant, is dismissed by the circuit court's final judgment or decree.

*Id.* at ——.

■ This court must now decide whether the amended version of Rule 54(b) should be applied retroactively to the instant case. We construe court rules using the same means and canons of construction used to interpret statutes. *See City of Fort Smith v. Carter*, 364 Ark. 100, 216 S.W.3d 594 (2005). In *Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 9 S.W.3d 520 (2000), we discussed the rules we adhere to when considering whether to apply a statute retroactively:

Our rule on this point could not be more clear. Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. *Estate of Wood v. Arkansas Dep't of Human Servs.*, 319 Ark. 697, 894 S.W.2d 573 (1995) (citing *Chism v. Phelps*, 228 Ark. 936, 311 S.W.2d 297 (1958)). Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to

operate prospectively only and not retroactively. *See Arkansas Rural Med. Practice Student Loan & Scholarship Bd. v. Luter,* 292 Ark. 259, 729 S.W.2d 402 (1987); *Chism, supra; Arkansas State Highway Comm'n v. Hightower,* 238 Ark. 569, 383 S.W.2d 279 (1964).

However, this rule does not ordinarily apply to procedural or remedial legislation. *Gannett River States Publ'g Co. v. Arkansas Industrial Dev. Comm'n,* 303 Ark. 684, 799 S.W.2d 543 (1990); *Forrest City Mach. Works v. Aderhold,* 273 Ark. 33, 616 S.W.2d 720 (1981). The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. *Harrison v. Matthews,* 235 Ark. 915, 362 S.W.2d 704 (1962). Procedural legislation is more often given retroactive application. *Barnett v. Arkansas Transp. Co.,* 303 Ark. 491, 798 S.W.2d 79 (1990). The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. *Arkansas Dep't of Human Servs. v. Walters,* 315 Ark. 204, 866 S.W.2d 823 (1993); *Skelton v. B.C. Land Co.,* 260 Ark. 122, 539 S.W.2d 411 (1976) (citing *United States v. Colorado Anthracite Co.,* 225 U.S. 219, 32 S.Ct. 617, 56 L.Ed. 1063 (1912)). 340 Ark. at 296–97, 9 S.W.3d at 526.

Rule 54(b)(5) is procedural and remedial and certainly does not disturb vested rights or create new obligations. This new rule merely attempts to avoid the problems on appeal created by a certain situation. In the Reporter's Notes accompanying Rule 54(b)(5), it is stated that the problem under Rule 54(b), as previously drafted, was that when, after the case had been appealed and briefed, the appellate court discovered a forgotten defendant whose presence destroyed the finality of the judgment being appealed, it was a waste of litigants' time and money and scarce judicial resources. Therefore, we will apply the new rule retroactively and allow it to serve its intended purpose.

Turning to the merits of the appeal, Jackson first argues that summary judgment should not have been granted in favor of Sparks because Sparks is not an entity entitled to charitable immunity. Appellees respond that Jackson failed to establish that Sparks is not a charitable organization based on the eight factors set forth by this court in *George v. Jefferson Hosp. Ass'n Inc.,* 337 Ark. 206, 987 S.W.2d 710 (1999).

This court's standard of review for summary judgment is well settled:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to

the pleadings, as we also focus on the affidavits and other documents filed by the parties.

*Sykes v. Williams,* 373 Ark. 236, 239–40, 283 S.W.3d 209, 212–14 (2008) (internal citations omitted).

This court has also established eight factors to consider when determining whether an entity is entitled to charitable immunity:

(1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.

*George v. Jefferson Hosp. Ass'n Inc.,* 337 Ark. 206, 211–12, 987 S.W.2d 710, 713 (1999). We have further instructed that these factors are "illustrative, not exhaustive, and no single factor is dispositive of charitable status." *Id.* (citing *Ouachita Wilderness Inst. v. Mergen,* 329 Ark. 405, 947 S.W.2d 780 (1997)).

■ A review of the evidence in the record shows that Sparks qualifies as a charitable institution based on the factors listed in *George, supra.* Consideration of the first and second factors suggest that Sparks is charitable as illustrated by its Articles of Incorporation, which were included in the record and state that Sparks is "a public benefit corporation" under the provisions of the Arkansas Nonprofit Corporation Act of 1993, and that it is "organized, pledges its assets to, and shall be operated exclusively for charitable, scientific, and educational purposes."

Dan Hamman, Chief Financial Officer for Sparks, in a sworn affidavit filed with Sparks's motion for summary judgment, stated that Sparks's operating margin in 2006 was (0.3)% and 1.5% in 2005, indicating a loss from operations. Hamman's affidavit also provided that any surplus funds are used "exclusively for charitable, scientific, and educational purposes," more specifically, to "perpetuate its charitable community benefit of providing medical assistance to the public." Further, the affidavit provided that, for the fiscal year 2006, the total unreimbursed value of providing charity care was approximately $3,045,284, and that under its Charity Care policy, Sparks provides services free of charge to patients unable to pay at the same level of care provided to those who are able to pay. Additionally, the unreimbursed value of providing care to persons covered by governmental programs at below cost totaled $5,691,424, which Sparks considers to constitute additional charity care. Considering this evidence in light of the third, fourth, fifth, and seventh factors also suggests that Sparks is entitled to a charitable status.

In considering the sixth factor, we note that Sparks does not depend solely on contributions and donations for its existence. Most of its operating funds are provided through Medicare, Medicaid, and individual patients or their private insurers. While the nonprofit hospital in *George* only received donations totaling approximately 6% of its financial obligations, this court stated that "a modern hospital, with rare exception, would find it extremely difficult to operate wholly or predominately on charitable donations." *George,* 337 Ark. at 214, 987 S.W.2d at 710. As was the case in *George,* the fact that Sparks receives most of its funding

through sources other than contributions or donations does not "negate its overriding charitable purpose." *Id.*

Finally, the eighth factor listed in *George* considers whether the directors and officers receive compensation. Article IX of Sparks's Articles of Incorporation provides that "[t]he Corporation shall not have or issue shares of stock and no dividends shall be paid, and no part of the income of the Corporation shall be distributed to its members, directors and officers." However, Sparks's Chief Executive Officer receives approximately $350,000 per year in compensation, and the next two ranking officers receive approximately $250,000 and $236,000 respectively. Jackson argues that those salaries, in addition to salaries of other full-time employees, are evidence that Sparks is "big business." This court has previously rejected that argument, stating:

> [I]t is not necessary for charitable organizations to have entirely volunteer staff and management. [Jefferson Regional Medical Center's] size and complexity make knowledgeable, well-qualified personnel essential. Such persons do not readily volunteer their services or serve at rates of compensation markedly lower than market rates.

*Id.* at 214, 987 S.W.2d at 710. Similarly, in the instant case, such compensation for certain positions required to manage and operate Sparks "does not put the hospital in the position of being maintained for private gain, profit, or advantage of its organizers." *Id.*

Based on the totality of the evidence shown in the record, circumstances, and the factors this court has adopted to help determine whether an organization is entitled to charitable immunity, the circuit court did not err in granting Sparks's motion for summary judgment. *See also Scamardo v. Sparks Reg'l Med. Ctr.*, 375 Ark. 300, 289 S.W.3d 903 (2008) (*Scamardo II*) (holding that Sparks was entitled to charitable immunity).

For his second point on appeal, Jackson argues that, although his amended complaint naming Columbia as a defendant was filed after the two-year statute of limitations for medical-malpractice claims and after the one-year savings statute had expired, due to the special circumstances of this case, the circuit court's dismissal resulted in an injustice. Further, he asserts that the circuit court should have found that his amended complaint related back to his original complaint, which was timely under the savings statute, or allowed him to proceed under the law as set out in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004) (*Scamardo I*). Appellees argue that the circuit court did not err because Jackson did not prove each element as required by Rule 15(c) of the Arkansas Rules of Civil Procedure to have the amended complaint relate back to the original filing. Specifically, appellees argue, as the circuit court reasoned, that Jackson did not prove that Columbia knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against Columbia.

The relevant facts are more clearly explained when set out in a time line as follows:

Feb. 2000: Alleged Malpractice

Feb. 7, 2002: Jackson timely filed a complaint against Sparks, Steadfast Insurance, Dr. Bell, Emergency Medical Services Group, Dr. Kale, and John Does Nos. 1–10.

May 6, 2002: Jackson filed amended complaint to substitute Columbia for a John Doe. (Columbia was the appropriate liability carrier for Sparks rather than Steadfast.)

May 7, 2002: Jackson voluntarily non-suited Steadfast.

Feb. 26, 2004: This court handed down *Scamardo I*, holding that a charitable institution was not necessarily immune from tort liability and, therefore, the statute allowing direct suit against the liability insurer did not apply.

April 6, 2004: Jackson voluntarily non-suited Columbia.

July 29, 2004: Jackson voluntarily non-suited Sparks.

July 25, 2005: Jackson refiled his lawsuit against Sparks, Dr. Bell, Emergency Medical Services Group, Dr. Kale, and John Does Nos. 1–10.

Dec. 15, 2005: This court handed down *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005), overruling *Scamardo I* and holding that a charitable institute was immune from tort liability.

Feb. 26, 2007: Sparks filed a motion for summary judgment, asserting charitable immunity.

July 11, 2007: Jackson filed an amended complaint, adding Columbia as a defendant.

The issue this court must decide is if Jackson was in fact "whipsawed" by the changes that took place in the law during the course of his lawsuit. It is undisputed that Jackson first filed his lawsuit against both Sparks and Columbia, but took a voluntary nonsuit against both parties in 2002 following this court's decision in *Scamardo I*. The *Scamardo I* decision upheld the principle established in *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), that charitable organizations are not altogether immune from suit and that a charitable organization may have a suit brought against it and a judgment entered against it. Therefore, Columbia, the liability insurer for Sparks, was not the appropriate party to sue at the time Jackson needed to refile his lawsuit as the statute permitting direct action against a liability insurer would not have applied.

On December 15, 2005, this court handed down its decision in *Low*, specifically overruling both *Scamardo I* and *Clayborn*. We held that charitable organizations were in fact immune from tort liability. *See Low*, supra. It is clear, at that point in time, that Jackson's claim against Sparks became subject to summary judgment, and he had lost his opportunity to file a claim against Columbia as the one-year savings statute had expired prior to this change in the law.

The next important filing in the case did not occur until Sparks filed its summary-judgment motion on February 26, 2007, based on charitable immunity. Before a hearing took place on that motion, Jackson filed an amended complaint on July 11, 2007, attempting to add Columbia as a defendant. Appellees' argument is that Jackson's action against Columbia was not timely because the two-year medical-malpractice statute of limitations and the one-year savings statute had both expired at the time Jackson attempted to amend his complaint. Jackson avers that his amended complaint should relate back to the time of the original filing under Rule 15(c) of the Arkansas Rules of Civil Procedure. The Rule states:

An amendment of a pleading relates back to the date of the original pleading when:

(1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(2) the amendment changes the party or the naming of the party against whom a

claim is asserted if the foregoing provision (1) is satisfied and, within the period provided by Rule 4(i) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Ark. R. Civ. P. 15(c) (2008).

The circuit court found that the claims clearly arose out of the same alleged conduct or occurrence and that Columbia received the requisite notice. However, the circuit court found that the last requirement of Rule 15(c), subsection (2)(B), was problematic because Jackson did not attempt to amend his complaint for eighteen months after *Low* was handed down. The circuit court found that the lapse of time between *Low* and Jackson's amended complaint gave the impression that something other than a mistake in identity was a factor. Appellees also use that reasoning in their argument on appeal.

The circuit court relied on *George v. Jefferson Hospital Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999), to support its finding that Jackson could have amended the complaint before the court ruled that the defendant was charitably immune. The court in *George* opined that the plaintiff there could have sued both the charitable institution and its liability insurance carrier initially and, through alternative pleading, not have jeopardized its claim against either the hospital or its insurer. 337 Ark. at 216, 987 S.W.2d at 715. However, the instant case is factually different from *George*. Here, Jackson had initially named both Sparks and Columbia as defendants, but took a voluntary nonsuit

against both parties. It voluntarily nonsuited Columbia after this court's holding in *Scamardo I*. *Scamardo I* was still the law when Jackson refiled his case and, therefore, Columbia would not have been a proper defendant for Jackson to name at that time.

There is nothing in the record to suggest why Jackson waited eighteen months to attempt to amend his complaint; however, the situation would not have been any different had he attempted to do so immediately following *Low*. In theory, Sparks could have filed its motion for summary judgment immediately following *Low* as well, but it did not do so until fourteen months later.

Appellees further argue that there was no doubt that Jackson knew the identity of Columbia because he was provided with Columbia's identity after his initial lawsuit was filed against Sparks and Steadfast. That is clearly undisputed, but is not the issue here. Rule 15(c) states only that there needed to be a "mistake concerning the identity of the *proper party*." (Emphasis added). While Jackson obviously knew that Columbia was the correct liability insurer for Sparks, he was unaware that Columbia was the proper defendant because of the change in the law. In fact, Columbia was not the proper defendant during the time within which he was required to refile his lawsuit. Columbia only became the proper defendant after *Low*, which was not decided until after Jackson lost his opportunity to refile against it.

Other cases have come before this court in which an appellant argued that the retroactive application of Low was unfair and prejudicial to their case. *See Anglin v. Johnson Reg'l Med. Ctr.*, 375 Ark. 10, 289 S.W.3d 28 (2008); *Neal v. Sparks Reg'l Med. Ctr.*, 375 Ark. 46, 289 S.W.3d 8 (2008); *Felton v. Rebsamen Med. Ctr.*, 373 Ark. 472, 284 S.W.3d 486 (2008); *Sowders*

*v. St. Joseph's Mercy Health Ctr.*, 368 Ark. 466, 247 S.W.3d 514 (2007). However, in the instant case, this court's decision in *Low* caused Jackson to make an understandable mistake, and not allowing Rule 15(c) to apply would indeed have an unfair and prejudicial result. In *Crowder v. Gordons Transports, Inc.*, 387 F.2d 413, 418 (8th Cir.1967), the Eighth Circuit Court of Appeals stated that Rule 15(c) was designed for relation back "to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Both bases apply here given the special circumstances of this case and, therefore, we hold that Jackson's amended complaint relates back to his original timely complaint under Rule 15(c). As a result, we reverse and remand the circuit court's order granting summary judgment as to Columbia. The summary-judgment order granted in favor of Sparks is, however, affirmed.

Affirmed in part; reversed and remanded in part.