2010 Ark. App. 372

**WALNUT RIDGE GOLF CLUB, INC., Appellant**

v.

**CITY OF WALNUT RIDGE; Walnut Ridge Airport Commission, Appellees.**

**No. CA 09–1044.**

Court of Appeals of Arkansas.

May 5, 2010.

Comrade W. Knauts, Knauts & Tidwell, Piggott, for appellant.

David Walton Cahoon, Cahoon & Smith, Jonesboro, for appellees.

LARRY D. VAUGHT, Chief Judge.

This appeal involves a lease dispute between appellant Walnut Ridge Golf Club, Inc. (the club), and appellees the City of Walnut Ridge and the Walnut Ridge Airport Commission (collectively, the city). The Lawrence County Circuit Court granted summary judgment to the city on the club's claim for an injunction, dismissed the club's claim for damages, and granted summary judgment to the city on its counterclaim for ejectment and possession of the property. The club argues seven points for reversal. We affirm.

The land at issue in this case, part of a former army air base, was conveyed to the city by the United States government by deed dated January 5, 1950. The deed contained a provision requiring that the city adequately clear and protect the aerial approaches to the airport by removing, lowering, relocating, marking or lighting

or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards. The parties both state that the golf course was in existence by 1960. The city leased the property to the club by leases dated March 1, 1972, and December 27, 1974. The 1972 lease was to expire in 2068, while the 1974 lease was to expire in 2025.[1] The yearly rental payment was $150 under the 1972 lease and $100 under the 1974 lease. The leases contained provisions stating that the leases were subordinate to the provisions in the deed by which the city acquired the property, as well as project grants between the city and the federal government. The leases further provided that the club could not construct any improvements without the city's consent and that such improvements could not violate federal aviation regulations. Both leases also contain a "no waiver" provision, stating that no delay or forbearance on the part of the city would be deemed a waiver of its right to terminate the lease upon a breach.

On April 23, 2008, the city wrote a letter to the club asserting that the club was in violation of the provisions of the deed by which the city acquired the property. The letter stated that the club was obstructing air navigation and that the continued operation of the club would interfere with the airport's future operations, including the ability to obtain grants for those operations. The city demanded that the club, at the club's expense, relocate to other lands that the city would provide.

On May 23, 2008, the club filed a petition seeking to enjoin the city from interfering with the operations of the club, specifically, from entering onto the property for purposes of removing any trees, struc-

tures, or improvements. The city responded with an answer and counterclaim. The answer denied the material allegations of the petition and asserted that the club was in breach of the leases. The counterclaim stated a cause of action for ejectment and alleged that the operations of the club had rendered the airport in noncompliance with mandated runway safety areas, constituting a breach of the lease.

The city later amended its counterclaim to assert that the leases were void because the city never sought approval of them from the Civil Aeronautics Administration, that the club's use of the property was permissive, and that the city had withdrawn its permission for the club to use the property. The city also asserted that the club's continued possession after it had breached the leases constituted an unlawful detainer. The club amended its "counterclaim" to assert that the city's actions in seeking to dispossess the club amounted to a taking of the club's property and sought compensation of $1,574,200.

On March 3, 2009, the city filed its motion for summary judgment. In the motion, the city asserted that the evidence would show that the club breached the leases and the deed by which the city acquired the property by obstructing aerial navigation at the airport. In support of the motion, the city submitted three documents. The first document was an October 26, 2006 letter from the FAA to the airport manager containing the findings of an earlier FAA inspection of the airport. The report noted that the golf course was located within the required runway safety areas of two of the airport's runways and had to be eliminated. The report also noted that a path for golf carts

1. It is not explained why there are two leases. It is unclear from the legal descriptions if the leases cover different tracts.

was located approximately ten feet from the edge of a taxiway and needed to be relocated. The second document was an August 22, 2008 letter from the Arkansas Department of Aeronautics to the airport's manager that reiterated the demand that the golf course be relocated so as to not be within the runway safety area needed for flight operations. The third document was a February 13, 2009 letter from the FAA to Mayor Michelle Rogers stating that the FAA would not be able to process the city's most recent grant application until the obstructions were removed from the runway safety area. The city also submitted the affidavit of Stacey Morris, a civil engineer who planed and designed projects for several airports, who stated that "a significant amount of golf course facilities are in violation" of federal standards.

In response to the motion for summary judgment, the club argued that there were issues of material fact to be determined and elaborated on those issues in an accompanying brief. The club also asserted that the placement of the golf course had not prevented the city from acquiring grant funds in the past and that the city was at fault in having the airport be non-compliant with federal standards by redesignating some of the runways. The club submitted affidavits and supporting documents from Robert Johnson, Terry Ryan, Morris Polston, Frank Kelley, and Allen Smith.

On May 28, 2009, the circuit court issued a letter opinion granting the city's motion for summary judgment for ejectment and dismissing the club's petition for permanent injunction. The court also dismissed the club's claim for damages on the basis that the city was immune. The court found that the leases between the club and the city had been breached and that possession of the property should be returned to the city. The court found that the city had the right to terminate the leases for the purpose of keeping the airport and its aerial approaches in a safe and serviceable condition and to maintain the property in accordance with FAA standards. The club was ordered to remove all improvements and return the property to its pre-lease condition within thirty days. The court's judgment was entered on June 5, 2009. This appeal followed.

The standard of review for summary-judgment cases is clear:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable minds might reach different conclusions from those undisputed facts. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 539, 294 S.W.3d 1, 4–5 (2009).

The club argues seven points on appeal: (1) there are material issues of fact to be determined as to waiver and estoppel and, therefore, summary judgment for the city was inappropriate; (2) the city's claim that the leases are void is barred by the seven-year statute of limitations found in

Ark.Code Ann. § 18–61–101 (Repl.2003); (3) the circuit court erred in finding a breach of the leases based upon the club's execution of a mortgage in violation of a non-assignability provision in the leases; (4) an injunction should have been granted because a majority of the members of the Airport Commission were not qualified to serve; (5) if the club must vacate the land, it is entitled to compensation for the taking of its property; (6) the circuit court should have fashioned a remedy that would have allowed the club to continue to operate while enabling the city to improve its runways; (7) it was the city's actions, not those of the club, that caused the airport to be in violation of the federal regulations. We discuss the club's points in a different order than presented in the briefs.

■ We begin with the club's seventh point where it argues that it did not cause the breach of the leases and that the breach came about as a result of the city's action in reclassifying a runway. The 1972 lease provides that the club "shall not construct any improvements on said property ... with[out] the prior written approval of [the city], and any structures permitted by [the city] shall be in accordance with [federal regulations]." The 1974 lease contains similar language that the club's improvements shall not violate specified federal regulations. The evidence is undisputed that the golf course was within areas restricted by federal standards and thus violates those standards. Therefore, based on the plain language of the leases and the undisputed evidence on this issue, the city established that the club was in breach.

The club does not dispute that the obstructions exist, but argues that it was the city's actions in reclassifying Runway 18/36 that brought about a breach of the leases because the reclassification required a larger safety area that covered the area occupied by the golf course. We disagree. Although there may be a factual dispute as to whether the city actually changed the designation of Runway 18/36, we do not believe that it mandates a reversal in this case because of the language of the leases.

We note that the club does not specify what provision of the leases the city is violating in seeking the club's eviction. From the club's citation to *Restatement (Second) of Property, Landlord and Tenant* § 6.1 (1976), we surmise that the club is relying on the implied covenant of quiet enjoyment. In *Dupree v. Worthen Bank & Trust Co.*, 260 Ark. 673, 543 S.W.2d 465 (1976), the supreme court recognized that, in the absence of language to the contrary, every lease contains an implied covenant of quiet enjoyment. In the present case, however, there is language to the contrary that makes this claim untenable.

■ It is undisputed that the leases both contain provisions that subordinate the leases to the provisions contained in the deed by which the city acquired the property. It is likewise undisputed that the deed requires the city to "adequately clear and protect the aerial approaches to the airport by removing, lowering, relocating, marking or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards." This provision requires the city to put airport safety as its top priority and is superior to any provision in the leases. By seeking the termination of the club's leases, the city is merely performing its duty to ensure the safety of the airport and those using the airport. Therefore, the city has not breached the implied covenant of quiet enjoyment because it is inapplicable in this case.

■ In its fourth point, the club argues that the court erred in denying its

petition for an injunction because a majority of the airport commission members were unqualified to serve because of various conflicts of interest. However, there is no mention of any commission members having any conflicts of interest in the club's petition for injunction. The only time the club raised this specific issue is in its brief in support of its response to the city's motion for summary judgment. When ruling on a motion for summary judgment, the circuit court cannot rely on factual allegations in trial briefs. *Pyle v. Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993). Moreover, Frank Kelley's affidavit, which purports to raise the issue, failed to do so.[2] Kelley stated his conclusion that all of the commissioners had conflicts based on the documents and his "personal knowledge of the commercial aviation interests of several Walnut Ridge Airport Commissioners." However, he failed to set forth any facts in his affidavit showing that the commissioners, in fact, had financial interests that would disqualify them. The supreme court has held that conclusory allegations in an affidavit are insufficient to create a fact issue in a summary-judgment situation. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003). Therefore, we conclude that the circuit court did not err in denying the club's request for an injunction.

■■■ The club's fifth point for reversal is that, if it is required to vacate its property, the city must compensate it for the taking. The club asserted a takings claim in its "Second Amended Counterclaim" to the city's ejectment action and asserted that the city's actions in terminating the leases amounted to a taking under the Due Process Clause. The circuit court did not specifically rule on the takings claim, ruling instead that the club's claim for damages was barred by immunity. Moreover, the club's argument that it is entitled to compensation because the city is taking its property is based on an erroneous premise because the city is not taking the property by eminent domain; it already owns the land on which the club operates.[3]

■■■ We cannot address the club's first, second, and third points because they are not preserved for our review. Although the club raised each of these issues, the circuit court did not specifically rule on them, and they are not encompassed by the court's other rulings. Without a ruling from the circuit court, we have no basis for a decision, and we are precluded from reviewing the club's arguments on these points. *Kralicek v. Chaffey*, 67 Ark.App. 273, 998 S.W.2d 765 (1999).

■■■ We likewise cannot address the club's sixth point, but for a different reason. The club argues that the summary judgment was inappropriate because equity abhors a forfeiture. In its brief in opposition to the motion for summary judgment, the club argued that the city had waived the right to assert a breach of the leases by accepting rental payments

---

2. The club relies on an earlier version of Ark.Code Ann. § 14–359–104, which provided that "[n]o member of the commission shall engage financially in any aeronautical enterprise while a member of the commission." Ark.Code Ann. § 14–359–104(c) (1987). The current version of the statute was enacted in 2005 and provides that "[n]o more than one (1) member of the commission may have financial dealings or interests in an aeronautical enterprise while a member of the commis-

sion." Ark.Code Ann. § 14–359–104(c) (Supp.2009).

3. The club does not argue that the circuit court erred in denying its takings claim on the basis of immunity, and we do not reverse on a ground not argued by the appellant. *See Cummings v. Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967); *McGuire v. Smith*, 58 Ark.App. 68, 946 S.W.2d 717 (1997).

after the existence of the obstructions came to light in October 2006. On appeal, it argues that the city redesignated Runway 18/36 to a C–III designation, which requires a larger safety area that encompasses some of the golf course, despite the conclusions of a study that recommended that the city designate another runway so as to not interfere with the club's operations. Thus, the club has changed its argument on appeal. It is well settled that an appellant cannot change its arguments on appeal but is bound by the scope and nature of the arguments made below. *Lewis v. Robertson,* 96 Ark.App. 114, 239 S.W.3d 30 (2006).

Affirmed.

GLOVER, J., agrees.

GRUBER, J., concurs.

RITA W. GRUBER, Judge, concurring.

I fully agree that this case must be affirmed. I write simply to note that this unfortunate situation could have been avoided had the parties been able to resolve this matter amicably, as the circuit court suggested on numerous occasions in the record. Doing so would enable the golf club to continue to operate while enabling the city to improve the airport's safety and facilities.