**Opinion filed September 16, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00075-CR
_____

## TRACIE LEE DAVES, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR34745**

### O P I N I O N

A jury found Tracie Lee Daves guilty of the offense of possession of a controlled substance (cocaine) in an amount of one gram or more but less than four grams. That same jury assessed her punishment at confinement for three years, and it recommended that the court suspend the sentence and place her on community supervision. In accordance with the jury's recommendation, the trial court placed Daves on community supervision for a term of six years. We affirm.

Appellant presents two points of error. In the first point, she complains that the trial court erred when it overruled her motion to suppress the fruits of what she perceives to be an unlawful search and seizure. In her second point of error, appellant maintains that the evidence is legally and factually insufficient to support the conviction.

Officer William Taylor Welch testified that on March 10, 2008, he was on canine patrol for the City of Midland. Officer Welch noticed that a driver failed to stop at a red traffic light. The officer followed the vehicle and saw the driver change lanes in an intersection and also saw him drive through a blinking yellow light. The driver also stopped at another red traffic light but drove on before it changed to green. After he observed those traffic violations, Officer Welch stopped the vehicle and, when he talked to the driver, noticed the smell of alcohol coming from him.

During the ensuing field sobriety tests, the driver, Cody Large, decided to prove to Officer Welch that he was not intoxicated, and he devised his own field sobriety test: he tried to walk on his hands. As Large was attempting to perform that task, various items began to fall from his pockets. One of those items was a purple marihuana pipe.

After Officer Welch arrested Large for possession of narcotic paraphernalia, he handcuffed him and placed him in front of the officer's patrol car. Officer Welch went back to the car that Large was driving and asked the passenger (who happened to be appellant) to get out of the vehicle so that he could search it "incident to arrest." Appellant got out of the vehicle and stood on the sidewalk. At some point in time, the officer discovered that the vehicle being driven by Large belonged to appellant.

Officer Welch began his search of the vehicle on the driver's side but found no contraband. He continued to search the vehicle and eventually searched the passenger area where appellant had been riding. Appellant's purse was in that area. Officer Welch looked in the purse and found a small baggie of marihuana, a prescription bottle (in someone else's name) that contained thirty-eight whole and twenty-two half Zoloft pills, pipe screens used in pipes for smoking marihuana, and a syringe that contained eighty cubic centimeters of a liquid. The officer also found a set of digital scales in the rear passenger area. Finally, Officer Welch found a baggie containing a white powdery substance stuffed between the front passenger seat and the center console. The liquid in the syringe and contents of the baggie field-tested positive for cocaine. It is appellant's possession of the contents of the baggie that forms the basis for the charge in this case.

Appellant claimed that the search was unlawful and unreasonable in violation of "Appellant's rights under The Fourth and Fourteenth Amendments of The United States Constitution; Article One, Section Nine of the Texas Constitution; and Articles 38.22 and 38.23

2

of The Texas Code of Criminal Procedure." Based upon those claims, appellant asked the trial court to suppress the results of the search of the vehicle. The trial court denied the motion, and appellant's claim remains the same in this court and is the subject of her first point of error.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We view the record in the light most favorable to the ruling, affording almost total deference to the trial court's ruling on express or implied determination of historical facts and its application of law-to-fact decisions that are supported by the record and turn on an evaluation of witness demeanor and credibility. *Id.* All other law-to-fact decisions are reviewed de novo, which includes a trial court's determination of reasonable suspicion and probable cause. *See State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court did not make explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the court made implicit findings of fact supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial court's ruling will be upheld if it is reasonably supported by the record and if it is correct under any applicable legal theory. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This is true even when the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede*, 214 S.W.3d at 24. Generally, those searches that are conducted without a warrant are said to be unreasonable. *Wiede*, 214 S.W.3d at 24. A defendant bears the initial burden to produce evidence that rebuts a presumption of proper government conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant has met that burden if he establishes that there was no warrant for the search or seizure. *Id.* The burden then falls upon the State to show that, under the totality of the circumstances, the search or seizure was nevertheless reasonable. *Id.* There was no warrant in this case, and the burden was upon the State to establish the existence of an exception to the warrant requirement in order to show that the search and seizure of appellant's vehicle and contents was reasonable. A search made incident to a lawful arrest, with certain conditions and

3

limitations, is one exception to the warrant requirement. This exception arises from officer safety and evidence preservation issues. *Arizona v. Gant*, 129 S.Ct. 1710, 1716 (2009).

Recently, in *Gant*, the United States Supreme Court addressed the issue of warrantless searches and seizures involving vehicles. There, Gant was arrested for driving with a suspended driver's license. He was handcuffed and locked in the back of a squad car. The officers then searched his vehicle and found a gun, and in a jacket lying on the backseat of the vehicle, they also found a bag of cocaine. Gant was convicted for possessing the cocaine. Gant took the position that the search of his vehicle was unreasonable. He could not reach into the vehicle for a weapon, and he was arrested for a traffic offense and no evidence related to that offense would be located inside the vehicle. Ultimately, the Arizona Supreme Court agreed and held that the search was not justified. A majority of the United States Supreme Court agreed with the Arizona Supreme Court. A search incident to arrest is unreasonable if it occurs after the person who is arrested has been secured and cannot access the interior of the vehicle. *Gant*, 129 S.Ct. at 1714. However, the Court also recognized that circumstances involving vehicle searches were unique and that a search of a vehicle incident to arrest is justified in those situations when it is reasonable to believe that evidence related to the offense for which the arrest was made might be found in the vehicle. *Id.*

The *Gant* court discussed and compared its earlier opinion in *New York v. Belton*, 453 U.S. 454 (1981). In *Belton*, the police stopped a vehicle because the driver was speeding. When the officer contacted the driver, he noticed the smell of burnt marihuana. The officer also saw an envelope in the floor of the car with the word "Supergold" written on it. The officer recognized the name as one relating to marihuana. The officer had probable cause to believe those persons in the vehicle had committed a drug offense. He told them to get out of the vehicle, and he placed them in places where they could not physically touch each other. The officer did not handcuff them because he had only one set of handcuffs, and he was the only officer present. He searched the vehicle and, as in *Gant*, found cocaine in the pocket of a jacket lying on the backseat.

In finding that the search in *Gant* did not pass constitutional muster, the Supreme Court wrote that officers were constitutionally permitted to search a vehicle incident to the arrest of a recent occupant only if that person is within reaching distance of the passenger compartment of the vehicle at the time of the arrest or, as in *Belton*, if "it is reasonable to believe the vehicle

contains evidence of the offense of arrest." *Gant*, 129 S.Ct. at 1723. And, a *Belton* search includes not only the passenger compartment but also "every purse, briefcase, or other container within that space." *Gant*, 129 S.Ct. at 1720.

In the case we are reviewing, the arrest was for possession of narcotic paraphernalia. It would be reasonable for the officer to believe that the vehicle contained evidence related to that offense. Because it would be reasonable for the officer to believe that the vehicle contained evidence related to the offense for which the arrest was made, the search of the passenger compartment of the vehicle and containers within it and the seizure of the items found as a result of that search were reasonable.

The trial court did not err when it denied appellant's motion to suppress. The first point of error is overruled.

In her second point of error, appellant argues that the evidence is both legally and factually insufficient to support her conviction.

To determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11. The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979).

We have already outlined the evidence as it relates to the night of appellant's arrest. It was appellant's position at trial that William Darrell Jobe and Paula René Doggett had left the cocaine in her vehicle when they borrowed it on March 9, 2008, the night before appellant was arrested.

Cody Large testified for appellant. He knew appellant, Jobe, and Doggett. Jobe and appellant were "cohabitating." On March 9, 2008, Large and Doggett were together in Doggett's car. Doggett called Jobe to make arrangements to buy some cocaine. Large and Doggett were going to "use" together. Large and Doggett met Jobe at "The County Line," a "sex shop." Jobe was in appellant's vehicle. Doggett gave the keys to her vehicle to Large, told him to "[f]ollow us," and got into the vehicle with Jobe. Jobe was driving. As Large was following them, a tire on the car being driven by him went flat. There were some complications in getting the tire changed, and Large never met with Jobe and Doggett.

Meanwhile, Midland County Sheriff Gary Painter did meet up with Jobe and Doggett. He saw appellant's vehicle parked in a place where it should not have been "at that time of night." The vehicle was "blacked out." Sheriff Painter called Midland County Deputy Sheriff Ronald Wright to assist him. Doggett was in the driver's seat, and Jobe was in the front passenger seat when Sheriff Painter arrived. When Deputy Wright joined Sheriff Painter, he saw Doggett outside of the vehicle on the driver's side. Jobe was in the front passenger seat. As Doggett walked toward Deputy Wright, she dropped several items on the ground. One of those items was a brown pouch with a syringe in it. Another of the items was a piece of a plastic bag that contained cocaine. Both Jobe and Doggett were arrested. Deputy Wright arrested Jobe later on an unrelated charge of possession of a controlled substance.

Sheriff Painter testified that he and Deputy Wright performed a full and thorough search of the vehicle. They found cotton balls with blood on them, needles with blood on them, and a Coke can containing wet cotton that tested positive for cocaine. Sheriff Painter also said that "there was some cocaine that was inside the car. There was [sic] also some plastic bags that had some residue." They did not find any bags of cocaine during the search on March 9, like Officer Welch did on March 10. When shown the cocaine appellant was charged with possessing and when asked whether he would have overlooked it during the March 9 search, Sheriff Painter said, "I wouldn't have missed that, no."

After Sheriff Painter and Deputy Wright completed the search of the vehicle, it was impounded and another search, an inventory search, was performed. No additional cocaine was noted.

The next morning, Large went to appellant's house and found out that Jobe and Doggett had been arrested and that appellant's car had been impounded. Large took appellant to the

impound to retrieve her car and then followed her back to her place of employment as manager of "Henry's Hide-Away," a bar in Midland. Large helped her with various chores at the bar and had been drinking throughout the day. At some point in time, Large took Doggett's car to her sister's house, and the sister drove him back to Henry's Hide-Away where he remained until closing.

The jury heard testimony that Large had been convicted of the felony offense of tampering with evidence in a cocaine case.

After the bar closed, Large and appellant got into appellant's vehicle; Large was driving. Four or five minutes later, Officer Welch was following them. As noted in our discussion of appellant's first point of error, Large committed several traffic violations, and Officer Welch stopped him. Again, as noted in our discussion of appellant's first point of error, this is the point where the officer suspected that Large was intoxicated and began to administer various field sobriety tests, including that devised by Large. During this time, the purple marihuana pipe fell out of Large's jacket; he was handcuffed and placed at the front of the officer's squad car.

Appellant testified. Her account of the day's events preceding Large's arrest are in essence in agreement with Large's testimony. She also testified that, when the officer asked Large to get out of the car, she assumed that the officer would want to see her insurance card. She opened the glove box to get the card and saw a syringe lying there. She "freaked out" and "panicked," and she dropped the syringe in her purse. She admitted to marihuana use and that the marihuana and related items in her purse were hers. She testified that "Dora Ruth Caldwell" gave her the Zoloft pills because Caldwell did not take them anymore and because appellant could not afford to get her own prescription refilled. But, in regard to syringes, appellant said, "I don't have anything to do with them. I mean, I don't shoot up or do anything like that." She maintained that it was "left over in the car from [Jobe] and [Doggett], because that's what they do when they get together." She did not know what was in the syringe, although she said that she had a pretty good idea.

After appellant had been arrested, Jobe told her that the drugs "were his; that he had them; that he put it in the glove box whenever the officer pulled behind him." Appellant testified that Jobe also told her that, when the time came, he would admit that "they were his." Jobe told appellant that he had told Sheriff Painter that the drugs were his. She could not find Jobe at the time of trial; he was hiding out because of probation violations.

7

Sheriff Painter testified that Jobe called him and told him that the drugs found in appellant's vehicle were his. The sheriff did not report that statement to the prosecutor because he thought Jobe was lying.

When we review all of the evidence in accordance with the well-established standards of review, we find it to be both legally and factually sufficient to support the verdict. The officers testified to the thoroughness of their search after the March 9 incident. Both Sheriff Painter and Deputy Wright were sure that, had the items Officer Welch found in the search on March 10 been present on March 9, they would have found them. Not only did they do a thorough search at the time of arrest, they also performed a subsequent inventory search. Sheriff Painter testified that he took everything out of the glove box when he performed the search on March 9. He told the jury that, if the syringe found in appellant's purse had been in the glove box, he would have seen it. The same is true of testimony regarding the cocaine found between the front passenger seat and the center console. The sheriff and the deputy both testified that they would not have missed that. Further, the jury was the judge of the credibility of the witnesses and the weight to be given to the testimony.

After reviewing all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime of possession of a controlled substance beyond a reasonable doubt. The evidence is, therefore, legally sufficient to support the verdict. Furthermore, after reviewing all of the evidence in a neutral light, the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust. And, the verdict is not against the great weight and preponderance of the conflicting evidence. Therefore, the evidence is factually sufficient. Appellant's second point of error is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

September 16, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8