**Opinion filed February 21, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00081-CR

_____

## JOSEPH LEE FERGUSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24444**

## M E M O R A N D U M   O P I N I O N

Appellant, Joseph Lee Ferguson, appeals his conviction for the first-degree felony offense of possession of a controlled substance with intent to deliver. After a bench trial, the trial court assessed punishment and sentenced Appellant to confinement for a term of twenty-five years. In his sole issue, Appellant challenges the trial court's denial of his motion to suppress. We affirm.

*Background Facts*

Because Appellant does not contest the sufficiency of the evidence to support his conviction, we only address the facts relevant to Appellant's motion to suppress.

On December 19, 2015, Carlyle Gover, a narcotics investigator with the Brown County Sheriff's Office, investigated Appellant for possible narcotics activity. Investigator Gover had received a tip from a confidential informant that Appellant "was involved in the use and distribution of narcotics." According to the informant, three individuals, including Appellant and Meranda Delgadillo, were at the Budget Inn in Brownwood. The informant further told Investigator Gover that there was "a beige or a gold color[ed]" "Crown Victoria" parked outside their room.

Investigator Gover determined that the vehicle was registered to Victor Romero, a member of the "Bastardo family." Investigator Gover knew Romero was involved in the distribution of marihuana. Additionally, Investigator Gover was familiar with both Appellant and Delgadillo. Investigator Gover was aware that Appellant had recently been arrested for a drug-related offense.[1] Further, Investigator Gover had previously arrested Delgadillo at another motel for possession of methamphetamine.

To verify the informant's tip, Investigator Gover decided to conduct surveillance on the vehicle in question. The location of the vehicle at the motel corroborated the informant's tip. Deputy John Gramling, who also had knowledge of Appellant's recent drug-related arrest, assisted Investigator Gover with this investigation; they were set up on opposite sides of the motel. Around 10:30 in the morning, Investigator Gover observed the vehicle that the informant had described exit the motel parking lot. Although Investigator Gover did not see anyone enter the

---

[1]The record reflects that the grand jury had indicted Appellant for unlawful possession of methamphetamine based on that arrest, which occurred on September 11, 2015.

vehicle, he proceeded to follow it. While doing so, Investigator Gover observed the driver of the vehicle commit two traffic violations: first, the driver stopped "over the limit line into the crosswalk" at an intersection; and second, prior to turning left at the intersection, the driver failed to signal 100 feet before the turn. *See* TEX. TRANSP. CODE ANN. § 544.007(d) (West Supp. 2018), § 545.104(b) (West 2011). Because of these violations, Investigator Gover initiated a traffic stop.

Investigator Gover then approached the vehicle on the passenger's side. Deputy Gramling, who also assisted Investigator Gover with the traffic stop, approached the vehicle on the driver's side. Investigator Gover identified three people inside. Appellant was the driver; Delgadillo (who identified herself as Victoria Sanchez) was the front-seat passenger; and Rodney Leatherman was the other passenger. Investigator Gover informed Appellant about the traffic violations. During this encounter, Investigator Gover noticed that Appellant had lit a cigarette and that his hands were shaking. When Investigator Gover asked Appellant about his behavior, Appellant responded that he "just woke up."

While Investigator Gover went back to his vehicle to run the names of the three occupants, which included checking for warrants, Deputy Gramling remained near the vehicle. Deputy Gramling observed Appellant continue to exhibit "nervous behavior." According to Deputy Gramling, Appellant had "shaky hands" and "a cigarette in his mouth," and he was "having trouble even keeping stable." Deputy Gramling also noticed that Appellant's "whole body seemed to be shaking." As a result, Deputy Gramling asked Appellant to exit the vehicle. Deputy Gramling wanted to confirm that there was no danger to either himself or Investigator Gover.

Next, Deputy Gramling asked Appellant to place his hands on the trunk of the vehicle and patted down Appellant's outer clothing to determine if he had any weapons. During the pat-down, Deputy Gramling felt what he believed was a "large

glass pipe" in the left-side, pant-leg pocket. Appellant told Deputy Gramling that he had a pipe in his pocket. Deputy Gramling retrieved the pipe from Appellant, which Deputy Gramling confirmed was a methamphetamine pipe. Deputy Gramling then placed Appellant in custody in the backseat of his patrol car and informed Investigator Gover about the "meth pipe" he had found. At some point, Leatherman told Deputy Gramling that the pipe belonged to him.

After Deputy Gramling discovered the pipe, Investigator Gover ordered everyone out of the vehicle. Delgadillo then told Investigator Gover her real name. At this point, Investigator Gover had confirmed that there was a warrant out for Delgadillo's arrest. With everyone outside, Investigator Gover and Deputy Gramling then searched the interior of the vehicle. On the front passenger floorboard, Investigator Gover found what he believed to be methamphetamine located inside an aluminum, "poker chip box." The record reflects that the poker-chip box contained several small containers and ziplock bags, which contained the suspected illicit substance. After this search, Appellant, Delgadillo, and Leatherman were placed into custody and transported to the Brown County Jail. The police later confirmed that the substance was indeed methamphetamine.

The grand jury indicted Appellant on one count of possession with intent to deliver methamphetamine in the amount of four grams or more but less than 200 grams. Appellant subsequently filed a motion to suppress. In the motion, Appellant broadly argued that the trial court should suppress any and all evidence and testimony related to or arising from Appellant's detention and arrest. Although the trial court set a hearing on the motion to suppress, the record reflects that no such hearing was held because Appellant withdrew the motion before trial. As a result, the trial court deemed the motion withdrawn. Appellant did not object to this determination or request another suppression hearing.

At trial, however, Appellant did object to the introduction of evidence based on arguments he made in his motion to suppress. Specifically, Appellant objected to the introduction of the poker-chip box (State's Exhibit No. 16). He argued that there was "no reasonable suspicion or probable cause for the extended search that [State's Exhibit No. 16] was a result of." The trial court then asked Investigator Gover, who was the testifying witness at the time, whether "any search that was done was done incidental to the arrest after the pat down and the finding of the methamphetamine alleged pipe." After Investigator Gover responded: "Yes, sir," the trial court overruled Appellant's objection. Appellant later objected to the introduction of the various containers and ziplock bags, which contained the actual methamphetamine (collectively State's Exhibit No. 17A). He similarly argued that there was "no reasonable suspicion or probable cause for the stop that yielded [State's Exhibit No. 17A]." Appellant also objected to the laboratory report (State's Exhibit No. 21), which confirmed the presence of methamphetamine in State's Exhibit No. 17A. The trial court likewise overruled these objections. Importantly, although Appellant objected to this physical evidence when the State introduced it, he did not object to testimony about the evidence prior to its introduction.

*Analysis*

In his sole issue, Appellant contends that the trial court abused its discretion when it denied his motion to suppress. He asserts that the police lacked reasonable suspicion for the initial stop of the vehicle.[2] Additionally, Appellant appears to argue that the search of the vehicle was unreasonable because the police lacked a warrant for the search.

---

[2]Appellant also asserts that the police lacked reasonable suspicion to detain him on a stop that occurred on September 11, 2015, which resulted in Appellant being charged with a separate offense. However, because Appellant has not appealed from his conviction in that case, we disregard this assertion in the present case.

Before we address Appellant's argument on the merits, we must first determine whether Appellant has preserved this issue for our review. To preserve error on a motion to suppress, a defendant is required to obtain a ruling from the trial court on the motion. *See* Tex. R. App. P. 33.1(a)(2); *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006); *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd) ("The failure to obtain an adverse ruling on a motion to suppress fails to preserve error."). If a defendant fails to seek a ruling before trial, he must object to the evidence when it is introduced at trial and request a hearing outside the presence of the jury. *See Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008). A motion to suppress is untimely at trial if it is made after the evidence, or substantial testimony about the evidence sought to be suppressed, has already been admitted without objection. *Campos v. State*, No. 13-16-00569-CR, 2018 WL 2148755, at *3 (Tex. App.—Corpus Christi 2018, pet. ref'd) (mem. op., not designated for publication).

Here, the record reflects that a hearing on Appellant's motion to suppress was not held and that the trial court never ruled on the motion. To the contrary, the trial court deemed the motion withdrawn, and Appellant failed to contest the trial court's determination before trial. Moreover, Appellant failed to expressly re-urge his motion to suppress at trial. Although Appellant objected to the introduction of the evidence related to the methamphetamine when it was offered, the record reflects that substantial testimony about this evidence had already been admitted without objection. Accordingly, we conclude that Appellant has failed to preserve this issue for appellate review.

But even if we assume that Appellant preserved this complaint, we conclude that the trial court did not err when it implicitly denied Appellant's motion to suppress, given its subsequent admission of the contested evidence at trial.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923.

Appellant contends that the trial court should have granted his motion to suppress because the police lacked reasonable suspicion for the traffic stop. We disagree. Appellant does not dispute that he committed the two traffic violations in question. Instead, to support his argument, Appellant asserts that "the information of December 19, 2015 about the car being registered to some member of the Bastardo family [does not] create reasonable suspicion [that] criminal activity was afoot." According to Appellant, "[s]ome vague belief about a member of 'the Bastardo Family' being in the vehicle in question fell far short of reasonable suspicion required for a lawful traffic stop." However, the record reflects that Investigator Gover stopped Appellant not because the vehicle in question was registered to a member of the Bastardo family, but because Appellant committed two traffic violations in Investigator Gover's presence.

It is well established that an officer may initiate a traffic stop if he has a reasonable basis for suspecting that a person has committed a traffic violation. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). An officer has

reasonable suspicion if he has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has been or soon will be engaged in criminal activity. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop." *Brodnex*, 485 S.W.3d at 437. Moreover, in determining whether an officer had reasonable suspicion, we consider the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

A vehicle operator commits a traffic violation when he, while facing a red light, fails to "stop at a clearly marked stop line" or, in the absence of a stop line, fails to "stop before entering the crosswalk on the near side of the intersection." TRANSP. § 544.007(d). Additionally, Section 545.104(b) of the Texas Transportation Code requires a vehicle operator intending to turn right or left to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *Id.* § 545.104(b).

Here, Investigator Gover testified that he personally observed the driver of the vehicle violate two traffic laws. Specifically, Investigator Gover stated that the driver (1) stopped in the crosswalk at an intersection and (2) failed to signal his intention to turn left 100 feet before the turn. Investigator Gover explained that these violations prompted him to pull the vehicle over. Therefore, we conclude that Investigator Gover had reasonable suspicion for the traffic stop.

Appellant also appears to contend that the trial court should have granted his motion to suppress because the police lacked a warrant to search his vehicle. We disagree.

8

The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Generally, searches conducted without a warrant are unreasonable. *Wiede*, 214 S.W.3d at 24. A defendant bears the initial burden to produce evidence that rebuts a presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant satisfies that burden if he establishes that there was no warrant for the search or seizure. *Id.* The burden then falls upon the State to show that, under the totality of the circumstances, the search or seizure was nevertheless reasonable. *Id.* Because there was no warrant in this case, the burden was upon the State to establish the existence of an exception to the warrant requirement to show that the search and seizure of the vehicle and contents was reasonable.

A search made incident to a lawful arrest is one exception to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under this exception, a search incident to arrest is permissible in two situations: (1) when the arrestee is unsecured and the area of the vehicle is within his immediate control or (2) when it is reasonable to believe that evidence related to the offense for which the arrest was made might be found in the vehicle. *See id.*; *State v. Sanchez*, 538 S.W.3d 545, 548 (Tex. Crim. App. 2017); *Daves v. State*, 327 S.W.3d 289, 293 (Tex. App.—Eastland 2010, no pet.).

Here, the record reflects that Appellant was arrested for possession of narcotic paraphernalia (i.e., the methamphetamine pipe). When we consider the totality of the circumstances, including Investigator Gover and Deputy Gambling's knowledge of Appellant's prior drug-related arrest; the confidential informant's tip that Appellant was involved in the use and distribution of drugs; Appellant's association

with Delgadillo and the vehicle in question; Appellant's nervous behavior upon being stopped; and Deputy Gramling finding the pipe in Appellant's possession, we conclude that it was reasonable for Investigator Gover and Deputy Gramling to believe that the vehicle contained evidence related to the offense for which Appellant had just been arrested. Therefore, the warrantless search of the vehicle and the poker-chip box was reasonable.

Accordingly, we conclude that the trial court did not abuse its discretion when it implicitly denied Appellant's motion to suppress. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


February 21, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.