606 So.2d 555 (1992)
David DOMINICI
v.
WAL-MART STORES, INC.
No. 91-CA-2474.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1992.
*556 Thomas P. Anzelmo, Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, for defendant/appellant.
Frank A. Bruno, Bruno and Bruno, New Orleans, for plaintiff/appellee.
Before LOBRANO, JONES and WALTZER, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of plaintiff-appellee, David Dominici and against defendant-appellant, Wal-Mart Stores, Inc. for injuries Dominici sustained when his vehicle struck a Wal-Mart shopping cart at the intersection of West Judge Perez Drive and Pakenham Avenue in Chalmette, Louisiana.
The case was tried on April 15, 1991. The trial court awarded Dominici forty-five hundred ($4,500.00) dollars for pain and suffering, past, present and future; three hundred and ten ($310.00) dollars for medical expenses; eighty five ($85.00) dollars for towing and one thousand ($1,000.00) dollars in property damage for a total award of five thousand eight hundred and ninety five ($5,895.00) dollars.
Wal-Mart appeals the judgment of the trial court asserting the following assignments of error:
1) The trial court committed manifest error in finding Wal-Mart Stores, Inc., negligent;
2) The trial court committed manifest error in its findings on the type and nature of injuries sustained by the plaintiff;
3) The trial court abused its discretion in the amount of damages awarded to plaintiff;
4) The trial court committed manifest error in not finding the plaintiff solely or comparatively at fault;
5) The trial court committed manifest error in failing to grant defendant's Motion for an Involuntary Dismissal.

TESTIMONY ADDUCED AT TRIAL:
David Dominici testified that shortly before midnight on February 22, 1990 he left his girlfriend's house and drove down Judge Perez Drive toward New Orleans. He stated it was raining heavily, the roadway was dark and visibility was "bleak". *557 As he approached the intersection of Judge Perez Drive and Pakenham Avenue the right front side of his vehicle struck a shopping cart and he lost control of his vehicle. He described the accident as follows:
"A. I was leaving my girlfriend's house around midnight or so, and it was teeming down raining, and visibility was bleak, and it was dark. And I was heading down the highway ...
* * * * * *
... And, all of a sudden, right in front of me was a Wal-Mart basket; and boom, I hit it, and I hydroplaned  hit the ground,...
* * * * * *
Q. What did you strike after that?
A. The neutral ground and a tree. And I grazed a pole ... I hit the pole and the tree right by each other, hit them and spun after I hit the neutral ground and busted all my rims and tires."
He described the cart as "dark blue" and stated he did not see it until it was right in front of him. He emphatically testified that the accident was unavoidable. It was "seconds", "split second" between the time he saw the cart and struck it.
He testified that he struck his head where the "windshield meets the window" but did not realize he was injured until he began experiencing headaches while sitting in the tow truck.
Dominici testified that several weeks after the accident he went to see Dr. Leon Weisberg because Dr. Weisberg had treated him in the past for vascular headaches. He stated he did not go immediately after the accident because he felt the headaches would "blow over" and only sought treatment when they persisted. He testified he saw Dr. Weisberg only twice and in June, 1990 began treatment with Dr. Robert Murphy because Dr. Murphy participated in Dominici's insurance plan at Avondale Shipyards. He stated it was less expensive and easier to see Dr. Murphy. He stated that he continues to see Dr. Murphy and last saw him two weeks prior to trial. He testified that both Dr. Weisberg and Dr. Murphy prescribed medication to treat the recurrence of the headaches.
On cross examination Dominici admitted that he had suffered in the past with vascular headaches. He stated that he has been treated by Dr. Weisberg as well as other doctors prior to the accident for vascular headaches. He admitted that on his job application with Avondale Shipyards he deliberately failed to disclose that he suffered with headaches in order to secure a job. He insisted that he had seen Dr. Murphy two weeks prior to trial even though Dr. Murphy's report indicates he last saw plaintiff January 17, 1991. He admitted that in April, 1990 he fell off a fence and hurt his back and in September, 1990 he fell backwards against a pipe rack during a sandblasting operation. He was treated for injuries following both accidents by Dr. I.L. Fontenelle. He admitted that he did not inform Dr. Murphy of these accidents.
Dominici vehemently denied telling Dr. Murphy that he lost consciousness. He also vehemently denied that he saw the cart in time to avoid the accident. He stated, "It was right in front of me. Right in front of me ... It was smack there. If I could have cut my wheel this way or that way, I would have hit it no matter what."
William Person testified that he was assistant store manager of the Wal-Mart store located adjacent to the scene of the accident. He stated that on February 22, 1990, he was in charge of securing the shopping carts at closing time. He testified that he searches for the carts by driving around the perimeter of the parking area behind and in front of the store. He stated the carts are rounded up by stockmen and stacked outside along the side of the store. They are not chained or locked together. He testified that customers wheel the carts throughout the parking area and even take them across the adjacent streets. He stated that he does not cross the street to look for carts. Only those that he can see from the parking lot would be retrieved. He stated that on the night of the accident no carts were left in the parking lot and he saw none near or *558 across Judge Perez Drive or Pakenham Avenue.
Officer Eric Levis testified that he investigated the accident the night of February 22, 1990. Upon arriving at the scene he observed a vehicle on the median facing in the opposite direction. He interviewed plaintiff who told him he struck a shopping cart and lost control of his car. His report indicated the Dominici's headlights and wipers were operational and that Dominici was wearing his seat belt. Officer Levis testified that plaintiff was not under the influence of drugs or alcohol and no citation was issued to him. The report further shows no skid marks were visible and Dominici's vehicle traveled 145 feet after the impact. Officer Levis testified it was raining and very windy. The roadway was dark and the street lights were out.
Dr. Leon Weisberg,[1] an expert in the field of neurology, testified he treated Dominici in March of 1985 and December of 1988 for vascular type headaches commonly called migraine headaches. Dr. Weisberg prescribed valium, cafergot and percodan. He instructed Dominici to return if the headaches persisted.
Dr. Weisberg stated that he did not see Dominici again until March 19, 1990. Dominici told him that the headaches recurred after he was involved in an automobile accident and struck his head on the car window. Dr. Weisberg testified that while this type of headache is caused by trauma, the stress surrounding an accident can cause the headaches to return. He called this type of headache a "letdown" headache which manifests itself after the stress is over. He stated that according to his records Dominici was headache free from December, 1988 until March, 1990 and that given Dominici's history he felt the accident exacerbated the headaches. He testified, however, that there is no way to estimate the duration of the exacerbation. While he stated that he felt Dominici's headaches in May, 1990 were most likely related to stress at work, he admitted that this determination depends basically on the history given by the patient.

THE LAW:
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of "manifest error" or unless it is "clearly wrong". Where there is conflict in the testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
When findings are based on a determination regarding the credibility of witnesses, the "manifest error  clearly wrong" standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Lirette v. State Farm Insurance Company, 563 So.2d 850 (La.1990), citing, Rosell, supra; Canter, supra.

ASSIGNMENTS OF ERROR 1, 4 AND 5:
At the conclusion of Dominici's case, Wal-Mart moved for an involuntary dismissal asserting Dominici failed to present evidence that Wal-Mart was negligent. The trial court denied defendant's motion and subsequently found Wal-Mart negligent and the cause-in-fact of the accident.
Defendant asserts the trial court committed manifest error in so finding. Specifically, Wal-Mart argues that Dominici failed to establish a legal duty on the part of Wal-Mart to chain, lock or otherwise secure the shopping carts and that Wal-Mart breached that duty. Defendant further asserts the evidence proves the cause-in-fact of the accident was the negligence of Dominici or at the very least the result *559 of a large degree of comparative fault which the trial court should have attributed to him. We disagree.
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Civil Code Article 2315. These acts include both acts of commission and omission if the duty imposed by the relationship of the parties is breached by such act or omission. Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983).
It is undisputed that Dominici struck a Wal-Mart shopping cart; that the cart was in Dominici's lane of travel on Judge Perez Drive adjacent to the location of the Wal-Mart store and that as a result of striking the cart, Dominici lost control of his vehicle and sustained property damage and bodily injury. Thus, the presence of the cart in the roadway was the cause-in-fact of the accident. A determination of cause-in-fact, however, does not necessarily result in liability. Dunne v. Orleans Parish School Board, 463 So.2d 1267 (La. 1985); Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970). Once causation is determined, the Court must also decide whether it was the result of a breach of duty imposed on the defendant and whether that duty encompassed the risk encountered. Dunne, supra.
Generally, negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. Dobson v. Louisiana Power and Light Company, 567 So.2d 569 (La.1990).
While we agree with defendant that there is no statutory or jurisprudential requirement that Wal-Mart chain or lock the carts kept outside the store, this fact does not preclude the imposition of a duty on Wal-Mart not to create an unreasonable risk of harm with its' shopping carts to motorists using the adjacent streets. Actual or constructive knowledge of a risk or injury gives rise to a duty to take reasonable steps to protect against injurious consequences resulting from the risk. See, Naylor v. Louisiana Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writ denied 427 So.2d 439 (La.1983) and writ denied 429 So.2d 127 (La.1983), writ denied 429 So.2d 134 (La.1983). Furthermore, whether a legal duty is owed by one party to another depends upon the facts and circumstances of the case and the relationship of the parties and, in all cases duty can be stated generally as an obligation to conform to a standard of conduct of a reasonable man under the circumstances. Seals v. Morris, 410 So.2d 715 (La.1981) on remand 423 So.2d 652 (La.App. 1st Cir.1982), writ granted in part 433 So.2d 686 (La.1983).
The testimony of assistant manager William Person substantiates Wal-Mart's knowledge that the carts are wheeled, not only throughout the area of the parking lot, but also across the adjacent streets. A shopping cart is no small object, whether constructed of plastic or metal, and colliding with one in the roadway is more likely than not to cause serious property damage and/or bodily injury. In our opinion their presence on or adjacent to a heavily traveled highway poses a risk of harm that is certainly unreasonable. Thus, we find no error in imposing a duty on Wal-Mart to take reasonable steps to prevent the kind of accident which befell Dominici.
Our next issue is whether Wal Mart acting as a reasonable storekeeper under the circumstances breached the duty owed Dominici.
William Person testified that it was his job to assure that all the carts were retrieved and stacked along the side of the store at closing time. Even though aware that the carts often are taken across the street, Person's area of inspection was confined to the parking lot behind and in front of the store. He testified as follows:
"Q. Were you the only one that  you are the one in charge of checking for buggies in the parking lot area?
A. Yes, sir.
* * * * * * *560 Q. Are you aware that some of these buggies can get across the street sometimes and across Judge Perez?
A. Yes, sir.
Q. When you do your roundup or you check the area, do you walk it; or do you drive it? How do you do it?
A. I drive around the parking lot, around the perimeter, behind and the front of the store before leaving.
Q. Do you go across the street to check to see if buggies are across the street?
A. Only when I am driving by, if I see any."
On cross-examination, Person testified that when he left the store that night he did not see any carts in the parking lot or in or across Judge Perez Drive or Pakenham Avenue.
In its reasons for judgment the trial court stated, "a cart left near the further reaches of the parking lot and not retrieved by store personnel could easily roll into Judge Perez Highway and create a hazard ..." (emphasis added).
Although not specifically articulated, it is obvious that the trial court rejected Person's testimony that no carts were left in the parking lot. By so finding, the Court, in effect, concluded Wal Mart breached its duty owed to Dominici.
The credibility of witnesses is for the trier of fact to determine. This is not only based on the fact finder's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Canter, supra. The trier of fact may accept or reject any part of a witness' testimony. Johnson v. Manis, 437 So.2d 359 (La.App. 4th Cir. 1983), writ den. 441 So.2d 1222 (La.1983); Payne v. New Orleans Public Service, Inc., 374 So.2d 189 (La.App. 4th Cir.1979). Giving great deference to the "manifest error clearly wrong standard" we find no error in the trial court's finding that Wal Mart was negligent.
We also find no error in the trial court's assessing no fault to Dominici. Dominici testified that at the time of the accident it was raining heavily, was windy and visibility was "bleak". Officer Levis testified that the street lights were out and the roadway was dark. Dominici testified he saw the cart in front of him seconds before impact and the accident was unavoidable. No evidence was presented that Dominici was speeding, not keeping a proper lookout, or under the influence of drugs or alcohol. In addition, Officer Levis testified the wipers and headlights on plaintiff's vehicle were operational, plaintiff stated he was wearing his seat belt and no skid marks were found. Given these facts we find the evidence does not support a finding of fault on the part of Dominici.
These assignments of error are without merit.

ASSIGNMENTS OF ERROR 2 AND 3:
Defendant asserts the trial court's damage award is manifestly erroneous, an abuse of discretion and/or excessive for the following reasons. First, defendant argues Dominici failed to prove that he sustained any bodily injury as a result of the accident, specifically an exacerbation of a pre-existing condition which causes vascular (migraine) headaches. Second, defendant asserts the record is devoid of any evidence that Dominici sustained "bumps and bruises" as stated by the trial court in its reasons for judgment. Third, defendant argues there was no medical evidence presented that Dominici would suffer pain in the future.
We first note that prior to trial, Dominici's medical expenses and property damage were stipulated to by the parties. Thus, the only amount in controversy is the trial court's award of forty-five hundred ($4,500.00) dollars for pain and suffering, past, present and future.
The test for determining the causal relationship between an accident and subsequent medical treatment is whether the evidence proves that it was more probable than not that the subsequent medical treatment was necessitated by the trauma suffered in the accident. Mart v. Hill, 505 So.2d 1120 (La.1987).
*561 The testimony is to the effect that in March, 1990, approximately one month after the accident, Dominici returned to Dr. Weisberg for treatment of his vascular headaches. Dominici told Dr. Weisberg that after he struck his head in the accident, the headaches returned. Given this information and the fact that Dr. Weisberg's records showed he last treated Dominici for headaches in December, 1988, Dr. Weisberg concluded the stress of the accident exacerbated the headaches but stated there is no way to estimate the duration of such exacerbation. Dr. Weisberg treated plaintiff until May, 1990 after which plaintiff began treatment with Dr. G. Robert Murphy on June 7, 1990. Dr. Murphy's report indicates that Dominici complained that since the accident he experienced pounding headaches, weakness and insomnia. Dr. Murphy diagnosed plaintiff as suffering from cerebral concussion with post concussion headaches and treated him thru January 17, 1991.
Thus, whether the accident caused the exacerbation of Dominici's headaches and to what extent depended solely on the credibility of David Dominici.
Defendant argues that the record clearly shows plaintiff is not credible and should not have been believed by the trial court. In support of this assertion, Wal Mart points to several portions of plaintiff's testimony which defendant alleges brings his veracity into question.[2] These inconsistencies and admissions by Dominici obviously were not sufficient for the trial court to conclude Dominici was untruthful about his accident related headaches.
Bearing in mind that the credibility of witnesses is for the trier of fact to determine, Canter, supra; Johnson, supra; Payne, supra, and reviewing the medical testimony and the record as a whole, we cannot say the trial court's assessment that Dominici's headaches were exacerbated by the accident was manifestly erroneous or clearly wrong.
In reviewing quantum, we must first determine whether there has been an abuse of discretion by the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Weaver v. Siegling, 569 So.2d 97 (La.App. 4th Cir.1990), writ den. 572 So.2d 67 (La.1991).
We agree with defendant that no medical evidence was presented that Dominici sustained "bumps and bruises" or that he would suffer future pain attributed to the accident. The trial court erred in so finding. However, the award will not be reduced. Dominici's treatment for vascular headaches attributed to the accident lasted almost one year. Given this fact, an award of forty-five hundred ($4,500.00) dollars for one year of pain and suffering is not excessive.
For the reasons assigned above, the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellant.
AFFIRMED.
NOTES
[1] Dr. Weisberg's testimony was via a sworn deposition of March 25, 1991 which was introduced into evidence.
[2] Dominici told Dr. Weisberg that he did not loose consciousness but told Dr. Murphy that he did. Plaintiff denied during cross examination that he told Dr. Murphy he lost consciousness. Dominici admitted that he deliberately failed to disclose to Avondale Shipyards on his job application that he suffered from headaches; Dominici did not inform Dr. Murphy that he sustained two other accidents in April, 1990 when he fell from a fence and in September, 1990 when he fell backwards against a pipe rack during a sandblasting operation.