Cite as 2020 Ark. App. 475

# ARKANSAS COURT OF APPEALS
## DIVISIONS II & III
### No. CV-20-35

| | |
|---|---|
| CARI ANN JACKSON<br>APPELLANT<br><br>V.<br><br>HARPS FOOD STORES, INC., D/B/A<br>HARPS FOOD STORES, A/K/A<br>HARPS<br>APPELLEE | **OPINION DELIVERED:** OCTOBER 21, 2020<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72CV-18-1349]<br><br>HONORABLE DOUG MARTIN,<br>JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Cari Ann Jackson appeals the Washington County Circuit Court's order granting summary judgment to appellee Harps Food Stores, Inc., d/b/a Harps Food Store, a/k/a Harps ("Harps"), in the negligence action she filed against Harps after she was injured by colliding with a grocery cart while driving her moped on Garland Avenue in Fayetteville. On appeal, Jackson argues that the circuit court erred by granting Harps's motion for summary judgment and in finding that Harps did not owe her a duty. We affirm.

## I. *Facts*

Jackson filed her complaint against Harps and John Doe Defendants 1–5 in March 2018. She alleged that Harps and its employees were liable for her injuries that occurred when a "loose grocery buggy was blown by high crosswinds from [Harps's] premises into [her] lane of travel as she was lawfully driving her moped south in the outside lane of Highway 112 adjacent to its intersection with Garland Avenue in Fayetteville, Arkansas."

She claimed that Harps had breached its duty of reasonable care owed to her and the public by failing to secure its grocery carts when they could be blown by high winds into the adjacent highway. She claimed that she was injured as a proximate result of Harps's negligence and that she had sustained temporary and permanent injuries that caused pain, suffering, medical expenses, future medical expenses, loss of her ability to earn, future loss of earnings, and property damage.

Harps filed a general answer and alleged that Jackson's complaint failed to state a claim and should be dismissed and that if Jackson sustained damages, they were caused by her own negligence. Harps asserted the defenses of contributory negligence, comparative fault, and assumption of the risk.

## II. *Motion for Summary Judgment*

Harps filed a motion for summary judgment on August 1, 2019. It claimed that there were no genuine issues of material fact existing that related to whether Harps's negligence proximately caused Jackson's injuries. Harps claimed that it did not breach any duty owed to Jackson, that its negligence did not proximately cause Jackson's damages, and that her damages were caused by her own negligence. Attached to the motion were Jackson's deposition and an affidavit of Sheldon Olson, a manager at Harps.

Olson's affidavit states that he was working as Harps's store manager on Garland Avenue on the night that Jackson crashed her moped near the store. He stated,

3. The store hours of the Harps in June 2017 were from 6:00 a.m. to 1:00 a.m., seven days a week.

4. The Harps averaged 70 to 75 shopping carts on the premises. Shopping carts are kept inside the Harps in a corral area to the right of the entrance. The area is monitored by cashiers working nearby, and when the carts in the interior

corral dwindle to about half capacity cashiers request cart retrieval over the intercom. When that call occurs, one employee or more goes to the parking lot to collect carts.

5. Typically, the Harps manager collects shopping carts between midnight and 1:00 a.m. with a final check at closing. Carts are brought inside overnight. There are four outdoor cart corrals, each of which hold 25 shopping carts or more.

6. In my 15 years at the Harps, it has been our policy to regularly check for shopping carts in the parking lot and place any unattended, uncorralled shopping carts in the corral. Also, we have not had notice of any ongoing problems with shopping carts rolling from the Harps parking lot onto Garland and creating an obstacle or hazard in the road. We have experienced issues with customers taking shopping carts from the premises to their homes or the UA bus stop, apparently instead of carrying their groceries by hand, and I occasionally canvas the surrounding area looking for Harps shopping carts.

7. On the night of the plaintiff's motor scooter crash, I was not aware of any unattended, uncorralled shopping carts or carts off the Harps premises.

In its memorandum in support of the motion for summary judgment, Harps cites Jackson's deposition testimony that she had been at a friend's apartment and had consumed a margarita around six o'clock that evening. She said that she left there on her moped to visit another friend around midnight as a storm was beginning to get more intense. She did not wear her helmet, but she wore nonprescription glasses, which were covered in raindrops, making it hard for her to see. She explained that she struggled to see as she was driving south on Garland Avenue, and she did not see the cart in her lane until she was four to six feet away from it. She also said that if she had not been wearing glasses, she would have seen the cart sooner. She hit the cart with her front tire and then woke up on the ground with police and paramedics around her. She refused an ambulance, so police took her to the hospital where staples were used to close her scalp wound, and it was discovered that she had a broken tooth, road rash, and fractures in her pelvis and ribs. Jackson stated

3

that she had "no idea" where the cart had come from or what caused it to be in the road—she explained "anything's possible . . . [m]aybe a kid was just playing around and pushed it, or maybe somebody forgot to put it away"—but she believed the "most likely case" is that the cart was blown into the road by the strong winds of the storm.

Harps argued that Jackson's claim that she ran her moped into a shopping cart without any explanation beyond mere speculation about how the cart came to be in the roadway could not constitute a colorable negligence action against Harps. Harps argued that the "law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached." *Young v. Paxton*, 316 Ark. 655 , 660, 873 S.W.2d 546, 549 (1994). Without proof of a breached duty owed to the plaintiff, a negligence claim fails as a matter of law. *Id.*

Harps claimed that the mere fact that an unattended shopping cart may have left its parking lot does not establish negligence. *See Kroger Co. v. Smith*, 93 Ark. App. 270, 273, 218 S.W.3d 359, 362 (2005) (holding that Kroger did not have a duty to assist customer when the customer's shopping cart tilted over while she was taking groceries to her car and holding that to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed the plaintiff under the surrounding circumstances). Negligence cannot be based on the failure to anticipate an unforeseen event. *Ethyl Corp. v. Johnson*, 345 Ark. 476, 481, 49 S.W.3d 644, 648 (2001). Instead, negligence is a question of whether the defendant was able to "reasonably foresee an appreciable risk of harm to others." *Coca-Cola Bottling Co. of Memphis, TN v. Gill*, 352 Ark. 240, 255, 100 S.W.3d 715, 724 (2003).

4

Harps cited two cases from other jurisdictions for the circuit court's use in analyzing the case. In *Kelly v. Berberich*, 36 A.D.3d 475 (N.Y. App. Div. 2007), the New York Supreme Court held that the plaintiff failed to establish that the Staples store owner created a condition that led to a shopping cart being on the highway through an affirmative act of misfeasance or that the owner had actual notice of shopping carts being blown from the parking lot onto the highway. In *Heavrin v. Shop 'n Save*, 922 S.W.2d 463, 464–65 (Mo. Ct. App. 1996), the Missouri Court of Appeals found in favor of the plaintiffs on their negligence claim related to damage done to their parked cars from carts straying from the adjacent parking lot. The court held that the plaintiffs presented evidence that carts routinely were allowed to remain haphazardly on the defendant's lot and had repeatedly strayed onto the adjacent lot so that defendant knew or should have known of the hazard presented. *Id.* Additionally, there was evidence presented of a foreseeable natural force, namely wind, which could have caused the collision. *Id.*

Harps argued that Jackson could not establish (1) how the grocery cart that she hit had strayed into the road; (2) that Harps was aware of a problem with its carts repeatedly straying into the road; or (3) that Harps failed to collect its carts regularly or allowed the carts to remain haphazardly on its parking lot. Thus, Harps argued that Jackson could not prove that it could reasonably foresee a risk that Jackson would collide in the roadway with a grocery cart or that Harps was negligent in causing the collision.

In her opposing brief, Jackson attached her deposition, Sheldon Olson's declaration, a photograph of Harps and the cart corral, and a highlighted map of the University of Arkansas bus route 33. She argued that Harps had a duty to secure its property; that it

5

breached that duty when it did not secure its carts; that the breach of duty was the actual cause of her injuries; and that the breach of duty was the proximate cause of her injuries.

Jackson argued that there were material facts in dispute. Jackson contended that Harps referred to the shopping cart as being "stationary" at the moment of impact. She argued that in her account, she described that the cart "looked like it was coming" toward her and that the cart was rolling into the road from the parking lot. Thus, she claimed that whether the shopping cart was in motion or was stationary is a disputed material fact. She also argued that Sheldon Olson's declaration did not show that Harps took precautions to avoid damages to third parties resulting from a lack of control of its property, that Harps was not aware of the dangers its uncontrolled property could foreseeably present, or that Harps had brought its property under its control.

Jackson also argued that Harps was not entitled to judgment as a matter of law because the disputed material facts demonstrated that Harps owed Jackson a duty. She claimed that Harps owed her a duty as a reasonably careful person under the circumstances shown with respect to its shopping carts. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998). She argued that the conditions and surrounding circumstances present at the time of the accident should be considered when applying the rule of reasonable care to determine fault. *Ben M. Hogan & Co. v. Krug*, 234 Ark. 280, 351 S.W.2d 451 (1961). She claimed that the sounds of the storm coming and the feeling that it was about to rain should have alerted Harps to its duty to act as a reasonably careful person and contain an unsecured cart. She also claimed that Harps had a duty to contain the shopping carts. *Ark.-La. Gas Co. v. Tuggle*, 201 Ark. 416, 146 S.W.2d 154 (1940) (railroad company had duty regarding placement of railroad

6

cars so as to prevent injury; but proximate cause of injury held to be intervening act of independent contractor). She argued that her testimony was that the cart corrals were situated at a slightly downhill angle that directs the shopping carts toward the exit and the road. She argued that Harps had a duty to position the carts and cart corral such that harm would be prevented.

Finally, she argued that Harps owed a higher duty of care because its employees voluntarily extended control over the shopping carts beyond Harps's premises, as evidenced by Olson's declaration that he collected stray carts taken off the premises. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, 470 S.W.3d 293 (when the landowner knows or has reason to know of a condition that is not open and obvious that creates an unreasonable risk of harm to licensees, the landowner is under a duty to use ordinary care to make the conditions safe). She argued that Olson was aware that customers took shopping carts from the premises to the UA bus stop on Garland Avenue. His canvasing the area on occasion to collect these carts was, according to Jackson's argument, a voluntary assumption of a duty and is imputed to Harps. She claimed that she was traveling in an area of this assumed duty.

Alternatively, Jackson argued that even if ordinary negligence was found to be inapplicable, the doctrine of res ipsa loquitur applied and allowed her to continue with her case. Harps replied that to invoke the doctrine of res ipsa loquitur, a plaintiff must show that (l) the defendant owes a duty to the plaintiff to use due care; (2) the accident is caused by the thing or instrumentality under the control of the defendant; (3) the accident which caused the injury is one that, in the ordinary course of things, would not occur if those

having control and management of the instrumentality used proper care; and (4) there is an absence of evidence to the contrary. *Johnson v. MS Dev. Co., LLC*, 2011 Ark. App. 542, at 4–5, 386 S.W.3d 46, 49. "To make certain that the injury has not been caused by somebody else, through some intervening negligence, it is ordinarily required that the instrumentality causing injury have been in defendant's exclusive possession and control up to the time of the plaintiff's injury." *Barker v. Clark*, 343 Ark. 8, 14, 33 S.W.3d 476, 480 (2000); *Brantley v. Stewart Bldg. & Hardware Supplies, Inc.*, 274 Ark. 555, 626 S.W.2d 943 (1982); *see also* AMI Civ. 609 (stating that exclusive control of the instrumentality by the defendant is a required element of res ipsa loquitur). Harps argued that because the shopping carts are available to its customers, Jackson cannot establish the element of exclusivity required for res ipsa loquitur to apply.

### III. *Summary-Judgment Hearing*

A hearing was held on the summary-judgment motion, and the oral argument included a discussion among attorneys for both parties and the court regarding whether Harps owed a legal duty to Jackson. Harps's counsel stated that the material facts were not in dispute; thereafter, the following colloquy occurred:

| | |
|---|---|
| MR. CHADICK: | . . . Plaintiff testified the cart was coming into the road from her right or left. I do not believe the cart entering the roadway or being stationary in the roadway pertains to the fact that no material facts are in dispute. |
| THE COURT: | It is my understanding [that] duty is always a question of law and whether a legal duty was breached is always a question for the jury. |
| MR. CHADICK: | Correct. My argument is if no one knows how the cart came into the road without only speculation, you cannot determine whether a legal duty was breached. |

8

. . . .

MR. ARMSTRONG: The biggest distinction between myself and Mr. Chadick is I believe it is not impossible to find the existence of a legal duty but that it is impossible to find no duty exists. Without reaching res ipsa loquitur, it is very clear a duty exists. Harps had a duty to control its property. A plaintiff cannot be required to do [the] impossible and account for every moment of an instrumentality. We cannot show how the cart entered the roadway. However, the cart's existence in the road speaks for itself. A company's policies and actions do not create a duty that did not exist before. I contend Mr. Olson's declaration shows he voluntarily canvassed the area and secured loose carts, demonstrating the voluntary assumption of a duty. Mr. Olson's declaration reads as that of a reasonable man who foresaw and appreciated the risk a loose cart posed.

The Arkansas Court of Appeals has discussed the creation of a duty through voluntary actions. The Court of Appeals stated the defendant may voluntarily assume a duty but if the issue was is [sic] argued, it will not be addressed. I am raising this issue and I argue that Harps voluntarily assumed a duty.

Alternatively, res ipsa loquitur applies to this case. It is foreseeable that a customer would not place a cart in a corral or leave it loose in the parking lot. The foreseeable actions by a customer do not destroy exclusiv[ity]. The cart's presence in the roadway speaks for itself. Mr. Olson's declaration speaks for itself. Harps had knowledge of unattended carts around its premises and Mr. Olson canvassed the area because he appreciated the harm a loose cart could pose.

THE COURT: Mr. Olson's affidavit does not state precisely what you just posed to me. I have read the affidavit several times and it was very carefully drafted. On this point, I agree with Mr. Chadick. This does not negate your argument but I am going to take away a bit of your ammunition. My understanding of [Olson's] affidavit was Harps would send whoever is available to collect carts when supply was low. It sounds to me like Mr. Olson was just trying to help the business survive. Mr. Olson's affidavit did state individuals would walk carts to the bus stop and others would carry the carts home. I do not want to read too much

9

into what Mr. Olson did not say but it did not come across to me as if Harps was collecting carts for any safety reason.

Arkansas law is clear that policies do not create a duty. What you are arguing is that the facts of this case would qualify for a policy creating a duty?

MR. ARMSTRONG: Yes, Your Honor.

THE COURT: Arkansas law does not provide the answer in this situation. I researched the issue myself and the closest case I could find was in Louisiana. Before I make my remarks, I will let Mr. Chadick respond.

MR. CHADICK: Mr. Armstrong is correct that a company's policies do not create a duty. The most relevant case involves Walmart and someone helping a customer. The customer was already there [and there] was a legal duty. For res ipsa loquitur, the plaintiff must prove exclusive control. There is no evidence that Harps was always in exclusive possession and control of the cart. The issue today is whether a legal duty exists.

THE COURT: The Louisiana case has different language and different laws. I never want to rely on a Louisiana case but the common-sense aspect appealed to me. The Louisiana case dealt with a cart that was close to the store. Here, the cart was found essentially on Garland right in front of Harps. The facts of the Louisiana case were very similar to those at issue today. The court held the cart's sheer proximity to the store created a legal duty. In the Louisiana case, there was no evidence of how the cart entered the roadway. The Louisiana case was the most similar case I could find to gather information on how to determine a question of law by evaluating foreseeability.

Arkansas law does not recognize a duty to protect against the possible as opposed to the likely or probable harm. Mr. Chadick stated that if I find a duty in this case, I would open Pandora's box. That is how the State of Arkansas elected officials would view this. I have no doubt if I granted this motion it would get reversed and the case would be heard anyways. I want to keep the issues to determining whether there is a legal duty. Mr. Chadick, your argument is because the plaintiff cannot prove a legal duty because the plaintiff cannot prove exclusive control?

10

MR. CHADICK: Yes, as it relates to res ipsa loquitur. As it relates to legal duty, I do not believe you have to reach foreseeability. Before reaching foreseeability, plaintiff has to explain how the cart got in the road. Plaintiff's position is Harps had a legal duty to secure the shopping cart. If every cart was inside and someone came in, stole it, and pushed it into the road, that would not be a violation of a legal duty. Without knowledge and evidence of how the cart entered the roadway, it cannot be determined whether a legal duty was breached.

THE COURT: Mr. Armstrong, without involving the fact that the cart ended up in the road, can you tell me what the legal duty is here? Is plaintiff's argument Harps owed a legal duty to maintain control of its property?

MR. ARMSTRONG: The duty is simply to maintain control of the property. Alternatively, the creation of a duty through voluntary acts and then res ipsa loquitur.

THE COURT: Whether Harps' policy acts have created a duty?

MR. ARMSTRONG: Yes.

THE COURT: I do not think that argument works.

MR. CHADICK: Can I add one more thing on res ipsa loquitur? The Court of Appeals has decided that res ipsa loquitur does not apply if there is no negligence. Exclusive control does not have to be discussed if there is no negligence. Plaintiff cannot prove negligence because there is no legal duty that has been established.

THE COURT: That places me back in a position of feeling like I am fact finding to determine whether there is a legal duty. There is no easy answer.

It is frustrating to interpret Arkansas law on a grocery cart issue. Personally, I feel like Harps should have a legal duty to keep their carts off the road and Garland in particular. I am not supposed to use my own knowledge but I grew up here. I have read the deposition and the pleadings. There is discussion about the hill where Harps is located. Common sense says, "yes," Harps should be responsible for this. Harps is correct regarding the law in Arkansas and no proof of negligence. There seems

11

to be a benefit of the doubt in Arkansas law and that is the case here. I read the deposition closely and I am sympathetic to the plaintiff. I hate to do this; it is inefficient and I have a feeling this is going to come back.

Before I make a ruling, I need to address Mr. Chadick's point. The briefs referred to the cart as stationary but the deposition stated the cart was moving. I believe that was the point Mr. Chadick made.

If this is appealed, this will come back and we will hear the case. Mr. Chadick is wisely focused on the lack of knowledge regarding how the [cart] entered the road from Harps' parking lot. Harps does not have a legal duty. The motion for summary judgment is granted based on my finding that Harps does not owe a legal duty to Ms. Jackson.

Accordingly, the circuit court dismissed Jackson's complaint with prejudice against all defendants. This appeal timely followed.

IV. *Standard of Review*

This court recently set forth the standard of review for summary judgment in a negligence action as follows:

> A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Muccio v. Hunt*, 2016 Ark. 178, 490 S.W.3d 310. The burden shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the evidence, the circuit court should deny summary judgment if, under the evidence, reasonable minds could reach different conclusions from the same undisputed facts. *Id.* All proof submitted must be viewed most favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Wade v. Bartley*, 2020 Ark. App. 136, 596 S.W.3d 555.

> On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. *Jackson v. Sparks Reg'l Med. Ctr.*, 375 Ark. 533, 294 S.W.3d 1 (2009). We, too, view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and

inferences against the moving party. *Id*. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id*.

Under Arkansas law, to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, 571 S.W.3d 528. Because the question of what duty is owed is one of law, we review it de novo. *Id*.

*Hall v. Immanuel Baptist Church, Carlisle*, 2020 Ark. App. 301, at 1–2, 602 S.W.3d 132, 133–34.

V. *Whether the Circuit Court Erred in Granting Summary Judgment*

Jackson emphasizes to this court that the evidence must be viewed in the light most favorable to the party against whom the motion for summary judgment was filed. *Ginsburg v. Ginsburg*, 353 Ark. 816, 120 S.W.3d 567 (2003). Harps asserts that although the evidence is viewed in the light most favorable to the party resisting the motion, the nonmoving party may not rest upon the mere allegation of its pleadings; instead, Rule 56 of the Arkansas Rules of Civil Procedure (2019) requires nonmoving parties to respond, by affidavits or other evidence, to specifically show that there is a genuinely disputed issue of material fact. *Porter v. Harshfield*, 329 Ark. 130, 134, 948 S.W.2d 83, 84–85 (1997) (citing *O'Mara v. Dykema*, 328 Ark. 310, 315–16, 942 S.W.2d 854, 857 (1997)); *see also Chamberlin v. State Farm Mut. Auto. Ins. Co.*, 343 Ark. 392, 396, 36 S.W.3d 281, 283 (holding that if movant "makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact"). When there are no disputed material facts, the appellate review "must focus on the trial court's application of the law to those undisputed facts." *Id*. at 396–97, 36 S.W.3d at 283. Furthermore, even if there are disputed facts, if reasonable minds would not differ as to the conclusion to be reached, then

13

a grant of summary judgment is proper. *Porter, supra.* Likewise, if a party opposing summary judgment cannot present proof on an essential element of the claim, the movant is entitled to summary judgment as a matter of law. *Id.*

First, Jackson contends that when reasonable minds might differ as to the conclusions to be drawn from the disclosed facts, a genuine issue of fact exists that is sufficient to render summary judgment improper. *Hurst v. Field*, 281 Ark. 106, 661 S.W.2d 393 (1983). Jackson claims that the Olson affidavit raised genuine issues of fact regarding Harps's knowledge of unsecured shopping carts that remained unsettled when the circuit court granted summary judgment. Jackson claims that genuine disputes of fact existed regarding (1) the frequency that carts were moved from Harps's premises to the adjacent University of Arkansas bus stops; (2) the nature of Olson's canvassing; and (3) the cart's state of motion at the time of the collision.

Second**,** Jackson argues that it is an error to grant summary judgment based on a determination that a duty existed at the time of the injury without first determining whether there was not a genuine dispute of material facts. *Lowry v. McCorkle*, 2015 Ark. App. 586, 474 S.W.3d 87 (holding in workplace-negligence action brought under an exemption of the workers'-compensation laws that while an employee's knowledge of a defective condition eliminates an employer's duty to warn, it does not follow that the employer's overall duty to exercise reasonable care in providing a safe workplace is also automatically eliminated, and questions of fact existed regarding employer's duty to exercise reasonable care). She contends that the circuit court did not make a determination that no material questions of fact existed before it made its decision on the question of law.

14

Third, Jackson argues that Olson's declaration raised numerous disputes of fact, and the doubts and inferences raised by them were not resolved in her favor. The circuit court stated that the inferences drawn by Jackson were not the court's understanding of the declaration. She claims that the disputed facts that arose from the declaration pertained to Harps's knowledge of unsecured shopping carts, Harps's knowledge of customers taking the shopping carts to University of Arkansas bus stops adjacent to Harps's property, and the collection of the unsecured carts. She contends that the court agreed with Harps's interpretation of the declaration. She argues that the interpretation made by the court did not take into consideration the locations of the bus stops and their close proximity to Harps's premises.

In response to Jackson's arguments, Harps contends that the determinative material fact in this case—which is wholly undisputed—is that Jackson does not know how the shopping cart she hit came to be in the roadway. We agree that this is the determinative question. Jackson testified she had "no idea" where the cart came from or what caused it to be in the road: "Anything's possible . . . [m]aybe a kid was just playing around and pushed it, or maybe somebody forgot to put it away." The circuit court was not confused about the nonstationary existence of the cart because Harps explained to the circuit court that references in its briefing to a "stationary" cart were not "an accurate representation" based on Jackson's deposition testimony.

Whether Harps owed Jackson a duty is a question of law for the court to determine, and Jackson's reliance on *Lowry*, *supra*, as requiring a finding that no material facts are in dispute before a question of law can be decided is misplaced. In *Lowry*, the circuit court

15

erred in determining that the negligence claim was based on a failure to warn. Instead, the claim was based on the defendant's duty owed to employees relating to a safe place to work, and it required a fact analysis the circuit court failed to make. Here, the question is what duty, if any, is owed by Harps to Jackson. This is always a question of law. To resolve this question of law, the circuit court was not required to ignore any disputed material facts.

We hold that the circuit court did consider the evidence in the light most favorable to Jackson. The court observed that it was sympathetic to her and had read her deposition closely. Further, reasonable minds could not conclude that Olson's declaration amounted to anything more than Harps's practice of corralling carts for the benefit of their use by shoppers—there was no mention of safety reasons for corralling the carts, and there had been no prior circumstance known to the fifteen-year employee of carts being on Garland Avenue. Finally, it was established that the cart was in motion when the collision occurred; however, the status of the cart, whether in motion or stationary, is not material to how or why the cart came to be on Garland Avenue.

VI. *Whether the Circuit Court Erred in Finding Harps Did Not Owe Jackson a Duty*

Jackson cites *Arkansas-Louisiana Gas Co.*, *supra*, wherein the Arkansas Supreme Court held that if the railroad company knew the railroad cars had to be moved in order to safely be dealt with, it was the railroad company's duty to move them. *See also Tri-B Advert. Co. v. Thomas*, 278 Ark. 50, 643 S.W.2d 547 (1982) (occupier of land owes duty to protect another from unreasonable danger created by structure); *Bolstad v. Pergeson*, 305 Ark. 163, 806 S.W.2d 377 (1991) (dog owner had duty to use ordinary care to prevent dog from running at large because dog posed a reasonable likelihood of injury).

16

Jackson argues that she was injured by an unsecured shopping cart, and the duty imposed on Harps is the same as the duty in the above-cited cases—to exercise ordinary care to prevent the property under one's control from causing harm to another. She argues that she did not have the opportunity to apply the brakes or take evasive action. The cart entered her lane of travel from Harps's parking lot as she drove on Garland Avenue. Despite Harps being located on a hill, the cart was unsecured and allowed to enter the roadway. Therefore, she contends that the circuit court's determination that Harps did not owe a duty to her was in error and contradicts well-established law in Arkansas regarding the duty to maintain control over one's property.

To prove negligence, there must be a failure to exercise proper care in the performance of a legal duty that the defendant owed to the plaintiff under the surrounding circumstances. *Marlar v. Daniel*, 368 Ark. 505, 247 S.W.3d 473 (2007). Harps contends that Jackson's interpretation of *Tuggle*, *supra*, is wrong. The supreme court determined that the railroad company was entitled to a directed verdict, and there was no evidence of the railroad company's negligence because the employee caused the injury by releasing the brakes on the railroad car. *Tuggle*, *supra*.

Similar to the *Tuggle* plaintiff suing the railroad company, Jackson sued Harps because it owned the shopping cart that she hit with her moped. As in *Tuggle*, there is no evidence of Harps's negligence causing Jackson's injuries; Harps's ownership of the shopping cart cannot establish negligence any more than ownership of the runaway rail car could establish the railroad company's negligence in *Tuggle*. Here, Jackson does not know what caused the

shopping cart to be in the roadway. Her not knowing what caused the cart to be in the roadway does not create a duty, a breach of duty, or negligence of Harps.

Jackson argues that the Louisiana cases cited by the circuit court provide valuable insight. In *Dominici v. Wal-Mart Stores, Inc.*, 606 So. 2d 555 (La. Ct. App. 1992), the Court of Appeals of Louisiana found no error with the trial court's imposition of a duty on Wal-Mart to take reasonable steps to prevent a shopping cart from entering the roadway adjacent to its store and causing an accident. The court in *Dominici* held that because the assistant store manager had knowledge that the carts were wheeled throughout the parking area and onto adjacent streets, Wal-Mart had constructive knowledge that a loose shopping cart posed a risk of injuries to others and reasonable steps were required to secure the carts. *Id.* at 558–59. Further, the court rejected the assistant store manager's testimony that "no carts were left in the parking lot" at the time of the accident because the shopping cart itself was not in the parking lot. *Id.* at 560. In the court's opinion, a shopping cart's presence on or adjacent to a heavily trafficked highway posed a risk of harm that is certainly unreasonable. *Id.* at 559. Because of Wal-Mart's constructive knowledge of shopping carts being wheeled through the parking lot and on the adjacent street, the court found no error in imposing a duty on Wal-Mart to take reasonable steps to prevent accidents such as the one in which Mr. Dominici had been involved. *Id.*

In *Jones v. Family Dollar Stores of Louisiana, Inc.*, 746 F. App'x 348 (5th Cir. 2018), the court found that no duty was owed when the decedent was riding his motorcycle and struck a red shopping cart that had been abandoned in the middle of the road. Family Dollar owned similar carts, and the cart involved had a specialized wheel, which operated as a

18

security system and would "lock" when the cart reached the outer portions of Family Dollar's premises. *Jones*, 746 F. App'x at 350–51. The court held that there was no duty owed the decedent as a matter of law because the cart had been taken a considerable distance from the store, and the accident did not take place in a road adjacent to Family Dollar. *Id.* at 354.

Jackson argues that, as in *Dominici*, the collision with the cart occurred on the street directly adjacent to Harps. She also contends that the bus stops that customers would wheel the carts to are also directly adjacent to Harps. Jackson was injured by an instrumentality owned by a business on a road directly adjacent to Harps. Olson canvassed the area for carts taken to the bus stops. Thus, Jackson contends that the circuit court erred in its finding that no duty existed.

Harps argues that the Louisiana cases fail to support reversal. The Louisiana theory, as described in *Dominici*, is that there may exist a "duty on Wal–Mart not to create an unreasonable risk of harm with its shopping carts to motorists using the adjacent streets. Actual or constructive knowledge of a risk or injury gives rise to a duty to take reasonable steps to protect against injurious consequences resulting from the risk." *Dominici*, 606 So. 2d at 559. As stretched by Jackson, the *Dominici* theory would make any possibility of an incident become a "risk or injury" of which a defendant has knowledge. Harps argues that this is not the law.

We agree with Harps that the duty described in *Dominici* cannot be applied to Jackson's case because there is no evidence of how the cart she collided with came to be on the roadway; as Jackson said, "Anything's possible . . . [m]aybe a kid was just playing around

19

and pushed it, or maybe somebody forgot to put it away." In the present case, Jackson could produce no reliable evidence of how the shopping cart ended up in the roadway—whether it was blown by the wind in a quick-forming storm or pushed by a prankster kid or got there some other way—and certainly is unable to demonstrate that the cart's presence was due to any breached duty owed by Harps.

Affirmed.

ABRAMSON and WHITEAKER, JJ., agree.

BROWN, J., concurs.

VIRDEN and SWITZER, JJ., dissent.

**WAYMOND M. BROWN, Judge, concurring**. The majority's opinion identifies the pertinent question as what duty, if any, is owed by Harps to Jackson. I agree that is indeed the question that must be answered. However, because I do not find that the majority directly answers that important question, I write separately to clearly and concisely express my opinion on that issue now. Harps owed Jackson no duty of care.

Jackson appeals the circuit court's award of summary judgment in her negligence action against Harps. To prove negligence, the plaintiff must demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries.[1] Duty arises out of the recognition that the relation between individuals may impose upon one a legal obligation for the benefit of another.[2] Whether a duty is owed to a plaintiff alleging negligence is always a question of

---

[1] *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, 537 S.W.3d 722.

[2] *Id.*

20

law and not one for the jury, and if the circuit court finds that no duty of care is owed, summary judgment is appropriate.[3] While there is no Arkansas case law involving grocery carts on which to rely, I do not find that troublesome.

Harps is located on a hill adjacent to a road on which Jackson was driving her moped and collided with a grocery cart. The incident occurred late at night, during a rainstorm, while Jackson was admittedly wearing nonprescription eyewear that impaired her vision as the raindrops on the glasses made it harder to see. Jackson acknowledged that had she not been wearing the glasses, she would have seen the grocery cart sooner. Jackson, a passerby, on the road adjacent to Harps had "no idea" how the grocery cart came to be in the road. Additionally, longtime employee of Harps, Sheldon Olson's declaration indicated that he was unaware of any prior incidents that the grocery carts had caused in the roadway. Without more, under these facts, Jackson's proximity to the store when she collided with the grocery cart did not create a legal duty of care owed by Harps.

For the reasons stated herein, I concur.

**BART F. VIRDEN, Judge, dissenting**. The trial court found, and our court now affirms, that Harps had no duty to keep its shopping carts off the highway. I cannot, in any fashion, agree that is the law. The majority affirms the order of the trial court but does so by finding there was no *negligence* on the part of Harps, a decision that was not made by the trial court and thus should not be the subject of our review. The decision of the trial court was explicit that Harps owed no *duty of care* to Jackson, not that she failed to prove

---

[3]*Kowalski v. Rose Drugs of Dardanelle*, 2011 Ark. 44, 378 S.W.3d 109.

21

negligence. Thus, we are affirming a ruling that the trial court did not make. In my view, that is a bad idea.

Despite the modern ubiquity of shopping carts, there is no Arkansas caselaw that specifically addresses the duty of care owed by a grocery-store owner to the public traversing adjacent roadways. There is, however, an overarching common-law duty of ordinary care that most certainly applies in this case. In general, it is the duty of all persons to use ordinary care for their own safety and the safety of others unless a statute or rule of law provides otherwise. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 53 (5th ed. 1984). We even have a jury instruction setting out the common-law duty: Ordinary care is the care a reasonably careful person would use under circumstances similar to those shown by the evidence. AMI Civ. 303 (2014); *Mangrum v. Pigue*, 359 Ark. 373, 198 S.W.3d 496 (2004).

The question before us is not whether negligence was proven. The question, and the only decision made by the trial court, is whether there was a duty. The facts in the present case are readily analogous to those cases involving large animals, runaway livestock, or other itinerant property that escapes its premises to cause harm to others. There have been novel causes of action for ordinary negligence in allowing domestic animals to run at large. The owners of cattle, horses, and other large farm animals that could cause substantial damage if allowed to run at large have a duty to control their animals. See AMI Civ. 1601. In *Finley v. Glover*, 229 Ark. 368, 315 S.W.2d 928 (1958), the Arkansas Supreme Court affirmed a judgment because the defendant negligently allowed his livestock to enter the plaintiff's rice field and graze. There have been numerous cases involving the negligent maintenance of

22

fences and the resulting damage caused when livestock escaped and entered a roadway. *See, e.g.*, *Smith v. R.A. Brooks Trucking Co.*, 280 Ark. 510, 660 S.W.2d (1983). The duty is one of ordinary care and common-law negligence. Here, we have an allegation that Harps allowed a shopping cart to "run at large" and leave its property, resulting in injuries to a member of the public on a public roadway.

By failing to acknowledge a duty of ordinary care owed to Jackson, the trial court could not provide the proper analysis of determining whether material issues of fact were still disputed. In fact, the trial court's oral ruling and written order are devoid of any finding that there were no disputed material facts such that summary judgment would otherwise be appropriate to consider. By focusing on the unknowns of how the *literal* cart came before the moped, the trial court places the *proverbial* cart before the horse. Before leapfrogging to whether the duty was breached (a question generally left for the jury or trier of fact), the duty must be determined. Here, it was not.

In *Lowry v. McCorkle*, as in the case here, the trial court granted summary judgment to McCorkle on the narrow basis that McCorkle (the employer) owed no legal duty to Lowry (an employee). However, this court, in reversing the grant of summary judgment, distinguished the difference between no duty being owed *ever* and no duty being owed under a specific theory of recovery:

> In short, while an employee's knowledge of a defective condition eliminates an employer's duty to warn, it does not follow that the employer's overall duty to exercise reasonable care in providing a safe work place is also automatically eliminated under the circumstances presented here. The trial court's decision short-circuited the duty analysis and thereby eliminated the need to address the materiality and disputed nature of the facts presented.

23

*Lowry*, 2015 Ark. App. 586, at 3, 474 S.W.3d 87, 89. In the present case, the trial court's analysis terminated upon its finding that "under Arkansas law, the law would be, as it stands based on the opinions right now, out there today, that Harp's does not have a legal duty" instead of applying the common-law reasonable-care standard to determine what, if any, material facts were still in dispute.

Our standard of review requires that this court view the evidence in the light most favorable to Jackson. In light of this standard and considering the trial court's findings through the lens of *Lowry*, I believe that summary judgment should be reversed. It would still be Jackson's burden to prove her case, but misapprehension of law at the summary-judgment stage should not preempt that process.

Reversing the trial court would not require us to create new law out of whole cloth but instead merely acknowledge the common-sense application of common-law negligence duties to a modern tort claim. We need not abandon both just yet.

Accordingly, I dissent.

SWITZER, J., joins.

*Niblock Law Firm, PLC*, by: *James R. Armstrong* and *James L. Niblock*, for appellant.

*Quattlebaum, Grooms & Tull, PLLC*, by: *Philip A. Elmore* and *Vincent O. Chadick*, for appellee.